THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD COLEMAN, Defendant-Appellant.

Third District   No. 82—271

Opinion filed July 8, 1983.—Rehearing denied August 11, 1983.

Robert Agostinelli and Stephen H. Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Patricia Hartmann, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

A jury convicted the defendant for the murder of Ima Jean Smith. The trial court sentenced the defendant to a term of natural life imprisonment. The defendant appeals his conviction and sentence.

On July 16, 1981, at approximately 5 p.m., the defendant and Smith entered a tavern in Rock Island. They were talking normally and appeared to be on friendly terms. Before they left the bar, the defendant asked to see a telephone directory. After the defendant and Smith left the tavern, a waitress noticed that the telephone book was open to the section which listed bus lines.

At approximately 7 p.m., Smith called her mother, Marie Vaughn in Davenport, Iowa. At some point in the conversation, Smith asked Mrs. Vaughn about her brother, Jack. Smith ended the conversation after stating, "Momma, I got to go. This fool is standing here rolling his eyes at me like he is crazy."

One or two hours later, a woman called a dispatcher for a local taxi company and requested a cab to go to 715 Fourth Avenue. That was the address of Smith's apartment. The dispatcher received another call from a man approximately 1½ hours later. This man requested a cab to go to the same address. Sometime later, the defendant appeared at the taxi office with two pieces of luggage. The company is located next to the bus station, which was closed at the time. The defendant asked about a bus schedule and returned to Smith's address about 45 minutes later.

Sometime between 10 and 10:30 that evening, Mrs. Vaughn received another call from daughter, requesting that she pick up Smith in Rock Island. Mrs. Vaughn and a friend left to pick up Smith. When they met Smith she was crying and apparently upset. Smith told Mrs. Vaughn that if she had not come to pick her up, she might never have seen her (Smith) alive again. Smith also said that the defendant broke two of her fingers because he thought that Smith was talking to her mother about another man. Mrs. Vaughn took Smith back to Davenport. After her fingers were taped, Smith left to spend the night with a friend.

The following morning, July 17, 1981, the defendant returned to the tavern alone. The owner inquired of Smith's whereabouts, and the defendant explained that he and Smith broke up. He also said he was going to California. At approximately 9 or 9:30 a.m., the defendant appeared at Mrs. Vaughn's apartment. He told Mrs. Vaughn that he came to say goodbye. Mrs. Vaughn testified that the defendant asked her not to hate him. According to Mrs. Vaughn, the defendant then turned away and whispered, "for what I'm about to do." Mrs. Vaughn asked the defendant what he said, and the defendant replied that he was undecided about what he was going to do. The defendant also told Mrs. Vaughn that Smith broke her fingers during an argument, when he pushed her and she fell over a chair.

A few minutes later, Smith arrived at her mother's home. She was surprised and, according to Mrs. Vaughn, upset that the defendant was there. She talked with the defendant for a few minutes, though, and left with him. Later that morning, at approximately 10:15 a.m., the defendant and Smith returned to the tavern. They left a short while later, and the defendant had his arm around Smith. At

trial, Mrs. Vaughn admitted that she did not approve of the defendant as her daughter's boyfriend. She also told the jury that her daughter dated Reginald Simon for two years prior to meeting the defendant and that Simon was the father of Smith's daughter.

Brenda Carter, a child-welfare worker, went to Smith's apartment at 1 p.m. on Friday. No one answered the knock on the door. Carter returned on Monday, July 20, 1981. Again, no one answered the door. Carter testified that she noticed an unpleasant odor at that time. Smith's landlord also tried to reach her on Friday and Monday. On Tuesday, when he noticed a strong door and flies around the door to Smith's apartment, he called the police.

The police gained entry into Smith's apartment and discovered Smith's body in an advanced state of decomposition. The police also found Smith's apartment in disarray. Men's and women's clothing was scattered about the living room and a torn photograph of the defendant and Smith was on the stove. Both the photograph and a pile of men's clothing in the kitchen were partially burned.

A witness testified that he saw the defendant at the Greyhound bus station in Davenport at 5 or 6 p.m. on Friday. The defendant checked into an alcoholic treatment center in Wichita, Kansas, at 6:30 p.m. on Saturday. Mrs. Vaughn testified that the defendant called her about two weeks later, and told her that he was in Chicago. When the defendant was arrested, he was in possession of three items of jewelry that belonged to Smith. The police also found a bus ticket dated July 17, 1981, in the defendant's possession.

Due to the advanced decomposition of the body, the pathologist was unable to pinpoint an exact time of death. The pathologist estimated that the body could have been dead for as little as two days. He attributed the cause of death to suffocation by a rag lodged in the victim's throat. The pathologist testified that several teeth were in the rag, indicating the victim had been beaten around the mouth. Several of the victim's ribs were also broken.

The first issue is whether the State proved the defendant guilty beyond a reasonable doubt. A reviewing court may not substitute its judgment for that of the jury unless the jury's decision is so palpably contrary to the weight of the evidence or unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827.) The fact that the State relies upon circumstantial evidence does not, alone, create a reasonable doubt as a matter of law. A conviction may rest upon circumstantial evidence and reasonable inferences therefrom. (*People v. Fletcher* (1978), 72 Ill. 2d 66, 377 N.E.2d 809.) Although the evidence

properly admitted against the defendant was entirely circumstantial, that evidence is sufficient to sustain his conviction. This evidence is not overwhelming, but reasonable jurors could conclude the defendant committed the crime.

■■ ■ The second issue is whether the trial court erred when it admitted hearsay statements into evidence. At issue are three comments Smith made to her mother. We have numbered these comments for convenience:

1. "*** this fool's standing here rolling his eyes at me like he's crazy."

2. Smith's comment that if her mother had not come for her, she might never have seen her alive again.

3. Smith's comment that the defendant broke Smith's fingers because he thought Smith had been talking to her mother about another man.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) Hearsay evidence is generally inadmissible unless it falls within an exception to the hearsay rule. The defendant contends these statements were irrelevant and inadmissible hearsay. The State responds that these statements are admissible because they demonstrate the declarant's state of mind or, alternatively, because they were excited utterances. The State also contends the statements were relevant because they are probative of the victim's mental state as well as the defendant's motive for the crime.

Extrajudicial statements that demonstrate the declarant's state of mind are admissible as exceptions to the hearsay rule. (*People v. Jones* (1980), 84 Ill. App. 3d 896, 406 N.E.2d 112.) For the statement to be admissible, the declarant must be unavailable and there must exist a reasonable probability that the testimony is truthful. (*People v. Goodman* (1979), 77 Ill. App. 3d 569, 396 N.E.2d 274.) The State argues that the first and second statements establish the decedent's fear of imminent harm at the time she was killed.

■■ There is no explanation, though, of the relevance of the victim's mental state. *People v. Lang* (1982), 106 Ill. App. 3d 808, 436 N.E.2d 260, and *People v. Adams* (1981), 102 Ill. App. 3d 1129, 430 N.E.2d 267, relied upon by the State, do not assist its argument. In both of those cases, the victim's state of mind was at issue. The defendant in *Lang* claimed the decedent died accidentally. In *Adams*, the defendant claimed he killed the victim in self-defense. By contrast, there was no question that the victim was murdered in the case at bar. (See also *United States v. Brown* (D.C. Cir. 1973), ·490 F.2d 758

(statements of fear by victim that he would be killed by defendant not admissible unless mental state of victim at issue).) Since the victim's mental state was not relevant, these comments should not have been admitted into evidence on this ground.

The State contends in the alternative that all three statements were admissible as excited utterances. The gravamen of the State's argument is that all these statements were made in haste, so they are admissible to show defendant's motive.

In order to admit hearsay under the excited utterance exception, the proponent must show an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, absence of time to fabricate the statement and a direct relation between the statement and the circumstances of the occurrence. (*People v. Leonard* (1980), 83 Ill. 2d 411, 415 N.E.2d 358.) The State cites no authority to support its argument, and we can find none.

There is no evidence that either the first or the second statement was the product of a startling event. A startling event is one which "*** 'stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. ***' " (*People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, citing with approval 6 Wigmore, Evidence sec. 1747 (3d ed. 1976).) The State argues, in essence, that a hasty end to a telephone conversation or an emotionally distraught declarant is sufficient foundation to admit the hearsay as an excited utterance. There is no merit to this proposition. If this were the law, any impromptu conversation would qualify as an excited utterance.

Even assuming an argument between the defendant and Smith was a startling event, there is no evidence of the length of time between that argument and her conversation with her mother. Thus, it is impossible to determine whether there was insufficient time to reflect and fabricate. (*Poland.*) In addition, this statement was irrelevant to any issue: The fact that a declarant fears for his life does not prove the identity of a body found later and, as we have already noted, the victim's mental state was never at issue.

As to the third statement, again there is no evidence of any startling event. More importantly, this comment is precisely the type of extrajudicial declaration that the hearsay rule bars from introduction into evidence. The State claims this statement merely demonstrates jealousy as a motive for the murder. This is undoubtedly true. The probative value of the comment, however, completely depends upon its truth. *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411

N.E.2d 61, cited by the trial court, is inapposite. In *Cherry*, a husband was charged with the murder of his wife. The court upheld the use of a divorce petition and its allegations to prove the husband's motive for the homicide. The petition was not used to prove the truth of the allegations. In the instant appeal, the State utilized a statement attributing jealousy to the defendant in order to prove he was jealous. Thus, it is an out-of-court statement used to prove the truth of the matter asserted. The trial court erred when it admitted these comments into evidence.

■■ This hearsay evidence is highly prejudicial. The remaining evidence is not overwhelming. The evidentiary errors, therefore, cannot be considered harmless beyond a reasonable doubt. In this situation, the defendant's conviction must be reversed and the cause remanded for a new trial. *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 432 N.E.2d 986.

■■ The defendant also contends the trial court erred when it admitted into evidence a note the police found in his wallet at the time of his arrest. The note said, "Regonal Simmon [*sic*], Ima Jean Smith, Richard Coleman Smith  Confidential false lover—they went through a complete change." Since the State never proved authorship of the note, the defendant claims it was irrelevant. The defendant also argues the note is so cryptic that it is meaningless and could only lead to unfounded speculation that would be prejudicial to the defendant. We disagree. This note, however cryptic it may be, indicates the existence of a possible romantic triangle. A romantic triangle does not actually have to exist in order for it to be a motive for murder. It is sufficient to show that a defendant believed it existed. Regardless of authorship, the defendant's possession of the note shows knowledge of a possible romantic triangle and, hence, jealousy as a possible motive for the murder. Therefore, the trial court properly admitted the note into evidence. See *People v. Reed* (1982), 108 Ill. App. 3d 984, 439 N.E.2d 1277 (personal address book of another individual which contained defendant's name and phone number, held properly admitted to show defendant's acquaintance with that individual).

■■ Next, the defendant contends the trial court erred when it admitted into evidence an autopsy photograph. At issue is a color slide of the decedent's decomposing, maggot-infested, partially autopsied body. The photograph depicts the upper portion of Smith's body. Several teeth are missing, and the brain is exposed and lying next to the head. The defendant's characterization of this color slide as "absolutely hideous" is mild. The State argues that a photograph of a murder victim is admissible, even though it is gruesome, if it is probative

of any fact in issue. As a mere statement of the law, of course, this is true. *People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783.

The State claims this color slide was probative of the victim's identity and the cause of death, but it offers no explanation as to how it is probative on these points. On the contrary, the State's pathologist testified that the slide was of no use to him in establishing the identity of the decedent. Even absent this admission, there is extremely little probative value in a photograph of an autopsied, decomposed body to establish the identity of the decedent. Furthermore, the cause of death was not at issue. Even if it were, the rag which caused the suffocation had been already removed from the cadaver's mouth. Finally, assuming the slide had an iota of probative value, that would not outweigh its unfair prejudice to the defendant. This slide had no purpose other than to horrify the jurors and arouse their emotions against the defendant. It had no probative value whatsoever, and it was error to admit it at trial. *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.

The cases cited by the State, *Jenko, People v. Johnson* (1975), 28 Ill. App. 3d 139, 327 N.E.2d 535, and *People v. Robinson* (1969), 106 Ill. App. 2d 78, 246 N.E.2d 15, are inapposite. In each of these cases, the courts clearly stated that the photographs were relevant to some fact at issue. Such is not the case here. It is unnecessary to determine whether this error would, by itself, constitute grounds for reversal.

Finally, the defendant raises an issue concerning his sentence. In light of our disposition of this appeal, it is unnecessary to resolve that question.

The judgment of the circuit court of Rock Island County is reversed and the cause is remanded for a new trial.

STOUDER, P.J., and BARRY, J., concur.