**Larry M. JOHNSON,
Petitioner–Appellant,**

v.

**James A. CHRANS, Warden, Pontiac Correctional Center, and Neil F. Hartigan, Attorney General of Illinois, Respondents–Appellees.**

No. 87–2025.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1987.

Decided April 21, 1988.

Gary R. Peterson, Asst. Defender, Springfield, Ill., for petitioner-appellant.

Joan G. Fickinger, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before WOOD and CUDAHY, Circuit Judges, and WILL, Senior District Judge.*

CUDAHY, Circuit Judge.

Petitioner, Larry Johnson, convicted of two counts of murder and one of attempted murder, filed a petition for a writ of habeas corpus in federal district court. He contended that he was denied his constitutional rights to due process and a fair trial when the state court excluded as hearsay relevant and reliable evidence tending to show that another person had committed the crimes. The district court denied the petition and Johnson appeals. We affirm.

I.

On April 21, 1984, the bodies of Patrick Mitchell and his daughter, Bobbi Jo Herriford, were found at Mitchell's house in Galesburg, Illinois; both died of gunshot wounds to the head. Mitchell's son, Michael Herriford, was found critically wounded, also with a gunshot wound to the head.

The most critical element of the evidence against Johnson was his connection to the murder weapon. Three .45 caliber shells were found at the scene. In May, the stock of a .45 Colt pistol was found in nearby Warren County. Its serial number matched that of a gun that Johnson, who owned a gun shop, had sold to Steven Crain prior to April 16, 1984. Crain testified that he had given the gun back to Johnson on April 16th at Johnson's request. Johnson instructed Crain to tell anyone who asked about the gun that he, Crain, had sold it at a gun show. When Crain learned that Mitchell had been killed with a .45 caliber gun, he asked Johnson what had become of the gun that he had purchased and returned. Johnson told him that it was in a safe place and reminded him to adhere to

* Honorable Hubert L. Will, Senior District Judge, Northern District of Illinois, sitting by designa-

tion.

the gun show story. The condition of the weapon that the police recovered made it impossible to conduct ballistic tests. However, a comparison of spent shell casings obtained from a prior owner of the gun and casings found on the scene showed that both sets had been fired from the same weapon.

Johnson was also implicated by his ties to Mitchell. Johnson was identified to the police as an associate of Patrick Mitchell in the drug business. Johnson himself admitted to investigators that in 1983 he had twice accompanied Mitchell when Mitchell obtained large quantities of cannabis.

On May 16, 1984, after recovering the gun and discovering that it had once been in Johnson's shop, the police questioned Johnson about the gun and the shootings. After eight hours of questioning, Johnson stated: "If you want a confession I'll confess. I knocked on the door. Pat came to the door. I shot him. The boy came and I shot him, and I went into the living room, and I shot the girl." At trial, Johnson contended that he only gave this statement to secure the release of his girlfriend, who was also in police custody at the time. The defense also established that the sequence of events Johnson described in this confession was inconsistent with the physical evidence and that the police had not believed the confession at the time it was given.

Johnson was also identified as the murderer by Michael Herriford. Immediately after the shootings, Michael told a police officer who interviewed him at the hospital that two men and a woman had been involved in the shootings. On August 14th, however, Michael picked Johnson out of a line-up. At trial, Michael testified that he answered a knock on the door on April 21, 1984, and brought Johnson into the bar room to see Mitchell. Michael testified that Johnson then grabbed him, put a gun to his head and said, "I want free dope." When Mitchell refused, Johnson shot Mitchell and then Michael. (Michael had no recollection of Johnson's shooting his sister, but the physical evidence was consistent with Johnson's having walked into an adjoining room and shot Bobbi Jo immediately after the first two shootings.)

A neurologist for the defendant testified that damage to Michael's temporal lobe made his memory "suspect." A psychologist testified that Michael's testimony could be unreliable because of a phenomenon called "memory overlap," the completing of partial memory by the unconscious creation of artificial memory. Neither of these experts personally examined Michael, although the neurologist reviewed the x-rays and hospital records.

Johnson testified in his own behalf. He repudiated his confession of May 16th and denied any involvement in the shootings. He also provided a chronicle of his activities of April 21st which was corroborated by five witnesses. This account was contradicted, however, by Johnson's initial statement to police that he had gone fishing on April 21st—a story made implausible by the rainy weather that day. Johnson also explained that he had retrieved the .45 from Crain to sell it to Rex McCreary, who had asked for an unregistered gun. McCreary, according to Johnson, had delivered cannabis to Patrick Mitchell on several occasions. In his rebuttal testimony, Rex McCreary conceded that he knew Mitchell, but denied shooting him or purchasing a gun from Johnson.

At trial Johnson's counsel sought to establish that Mitchell had been threatened by a supplier, "Larry T.," whom Mitchell said he owed $10,000. The trial court rebuffed defense counsel's attempt to call witnesses to testify as to Mitchell's statements about Larry T., ruling that the proffered testimony was inadmissible hearsay. Defense counsel contended that this testimony was admissible under the state-of-mind exception to Illinois' hearsay rule. The defense preserved its objection through an offer of proof consisting of police summaries of statements given by the proposed witnesses during the police investigation.

The jury convicted Johnson of two counts of murder and one count of attempted murder. Johnson was sentenced to natural life in prison for murder and a concurrent term of sixty years for attempted murder.

Johnson filed a direct appeal contending, *inter alia*, that the trial court had denied him his sixth amendment right to present a defense and fourteenth amendment right to due process by excluding as hearsay Mitchell's statements that another person may have committed the crimes. The Illinois Appellate Court affirmed Johnson's conviction and the Illinois Supreme Court denied his petition for leave to appeal. Johnson then raised these same claims in a habeas corpus petition filed with the United States District Court for the Central District of Illinois. The district court found that the exclusion of the hearsay statements violated due process and interfered with Johnson's right to present a defense, but that the constitutional error was harmless beyond a reasonable doubt.

## II.

This case presents the now familiar conflict between the rights of criminal defendants under the sixth and fourteenth amendments to present evidence in their own defense and each state's "sovereign prerogative" to regulate the presentation of evidence in its courts. *McMorris v. Israel*, 643 F.2d 458, 460 (7th Cir.1981), *cert. denied*, 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed. 2d 684 (1982). In accordance with the Supreme Court's analyses in *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979), and *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), we employ a balancing approach to resolve this conflict. Our task, we have stated, is "to evaluate the exculpatory significance of ... [relevant and competent] evidence and then to balance it against the competing state interest in the procedural rule that prevented the defendant from presenting this evidence at trial." *McMorris*, 643 F.2d at 461 (footnote omitted); *see Alicea v. Gagnon*, 675 F.2d 913, 923 (7th Cir.1982).

Our assessment goes beyond merely reciting broad formulations of the countervailing constitutional interests. We examine the specific justifications for excluding or admitting particular evidence in a particular case. A colorable claim that the application of state evidentiary rules has interfered with a defendant's right to present a defense triggers an assessment whether these legitimate state interests, such as interests in preserving order, in excluding unreliable evidence and in maintaining control over court procedures, are materially advanced by the exclusion of particular evidence. *See, e.g., Spencer v. Texas*, 385 U.S. 554, 564, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967). Thus, *Chambers* held that concerns about reliability and jury confusion could not support a distinction between out-of-court declarations against pecuniary interest, which were admitted under Mississippi's hearsay rule, and out-of-court declarations against penal interest, which were excluded, when this distinction operated to exclude a credible confession that would have exonerated the defendant. 410 U.S. at 299–302, 93 S.Ct. at 1047–49; *see also United States ex rel. Enoch v. Hartigan*, 768 F.2d 161, 162–63 (7th Cir.1985) (state's interest in preventing surprise and confusion through rule barring witnesses not identified in advance of trial cannot sustain exclusion of highly material exculpatory testimony), *cert. denied*, 475 U.S. 1054, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986); *McMorris*, 643 F.2d at 462–63 (state cannot refuse to admit exculpatory polygraph results based solely on prosecutor's discretionary decision to oppose admission).

On the other side of the balance, we also examine carefully the significance of the contested evidence to the defendant's case. Though "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049, the right to present exculpatory evidence—even relevant and competent exculpatory evidence— may still "bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046, cited in *McMorris*, 643 F.2d at 460. The strength of defendant's argument that state rules of evidence, rather than the defendant's right to present exculpatory evidence, should give ground depends largely on the importance of the evidence. *See Sharlow v. Israel*, 767 F.2d 373, 378–79 (7th Cir.1985) (proffered hearsay evidence

not critical to defense), *cert. denied,* 475 U.S. 1022, 106 S.Ct. 1212, 89 L.Ed.2d 324 (1986); *Perry v. Rushen,* 713 F.2d 1447, 1452–53 (9th Cir.1983) (proffered evidence that another party committed similar crimes not sufficiently probative to compel its admission), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984); *see also United States v. Valenzuela–Bernal,* 458 U.S. 858, 866–72, 102 S.Ct. 3440, 3446–49, 73 L.Ed.2d 1193 (1982) (government cannot be sanctioned for deporting defense witnesses without showing that testimony would have been favorable and material).

### III.

■ Applying this balancing approach to the hearsay evidence that Johnson sought to present, we conclude that the trial court was entitled to apply the Illinois rule.

First, we find that the boundaries that Illinois courts have placed around the state-of-mind exception to the hearsay rule are well supported, both as a general proposition and as applied to the facts of this case, by concerns about reliability and jury confusion. Illinois courts admit out-of-court statements under the state-of-mind exception if the declarant's state of mind is directly in issue, *e.g., People v. Adams,* 102 Ill.App.3d 1129, 1135, 58 Ill.Dec. 325, 331, 430 N.E.2d 267, 273 (2d Dist.1981) (victim's state of mind relevant to defendant's claim of self defense), or if the declarant's state of mind gives rise to reliable inferences about the declarant's later conduct, *e.g., People v. Lang,* 106 Ill.App.3d 808, 815, 62 Ill.Dec. 510, 516, 436 N.E.2d 260, 266 (3d Dist.1982) (victim's state of mind casts doubt on defendant's claim that marriage was happy and shooting of wife was accidental). *See also People v. Coleman,* 116 Ill.App.3d 28, 33, 71 Ill.Dec. 819, 822, 451 N.E.2d 973, 976 (3d Dist.1983) (explaining

relevance requirement for state-of-mind exception).[1] Illinois courts do not, however, admit out-of-court statements regarding the defendant's state of mind as proof of subsequent conduct by a person other than the declarant. *See People v. Goodman,* 77 Ill.App.3d 569, 574, 33 Ill.Dec. 49, 53, 396 N.E.2d 274, 278 (4th Dist.1979) (distinguishing between permissible use of state-of-mind declaratins to prove declarant's subsequent actions and impermissible use to prove someone else's subsequent actions); *People v. Reddock,* 13 Ill.App.3d 296, 305, 300 N.E.2d 31, 38 (2d Dist.1973) (statements of deceased that he was going with defendant to look at real estate inadmissible to show any intent on part of defendant to set out on such a mission). Illinois further requires that the declarant be unavailable as a witness and that there be a reasonable probability that the statement is trustworthy. *E.g., Lang,* 106 Ill.App.3d at 815, 62 Ill.Dec. at 516, 436 N.E.2d at 266 (trustworthiness established where same declaration was made on three separate occasions to three separate witnesses).

Johnson claims that the Illinois rule expresses an unsupported preference for state-of-mind evidence that goes to the declarant's conduct and mental state. This contention, however, ignores a clear distinction between the reliability of out-of-court statements as proof of a declarant's state of mind and the reliability of such statements as proof of subsequent conduct by someone other than the declarant. If Johnson were offering hearsay evidence concerning Mitchell's statements to prove Mitchell's state of mind, there would be something of a reliability problem due to the prosecution's inability to cross-examine Mitchell to determine whether he had honestly described his state of mind to the witness.[2] Illinois' state-of-mind exception

---

1. Certain language in *Lang* might be interpreted as weakening or eliminating the relevance requirement. 106 Ill.App.3d at 815, 62 Ill.Dec. at 516, 436 N.E.2d at 266 ("The only requirements for ... admissibility [of out-of-court declarations of state of mind] are the unavailability of the declarant and a reasonable probability that the proffered testimony is truthful."). *Coleman,* however, clarifies that the declarant's state of mind must be relevant to the defendant's claims

about the declarant's actions. 116 Ill.App.3d at 33, 71 Ill.Dec. at 822, 451 N.E.2d at 976. Johnson does not contest that the rule in *Coleman* was correctly stated and applied at trial.

2. We disregard unreliability arising from the possibility that the witness misunderstood Mitchell, remembered Mitchell's statements incorrectly or knowingly distorted Mitchell's statements. Reliability problems attributable to wit-

reflects a judgment that this measure of unreliability is acceptable where the declarant's state of mind is directly relevant.

Johnson, however, proposes to use Mitchell's out-of-court statements to suggest that Larry T. actually threatened Mitchell and that Larry T. should therefore be considered an alternative suspect. This proposed use introduces additional sources of unreliability. In addition to the danger that Mitchell misrepresented his state of mind to the witness, there is the possibility that Larry T. misrepresented his intentions or that Mitchell misunderstood him. Moreover, Johnson, as far as the record indicates, had only one witness prepared to testify that he had heard Mitchell talk about a threat from Larry T. Other testimony described in Johnson's offer of proof, which concerned Mitchell's acknowledging debts to Larry T., would have provided, at best, weak support that the alleged threat had been made.[3]

Illinois' refusal to allow litigants to present evidence beset with such severe reliability problems is supported by a broad range of judicial, legislative and academic opinion. *See, e.g., Shepard v. United States,* 290 U.S. 96, 103–06, 54 S.Ct. 22, 25–26, 78 L.Ed. 196 (1933) (decedent's statements that she was poisoned by her husband inadmissible under state-of-mind exception); *United States v. Kaplan,* 510 F.2d 606, 610–11 (2d Cir.1974) (evidence of declarant's state of mind inadmissible due to danger that jury would be unable to avoid impermissible inferences about defendant's actions); *People v. Alcalde,* 24 Cal.2d 177, 189, 148 P.2d 627, 633 (1944) (Traynor, J., dissenting) ("A declaration as to what one person intended to do, however, cannot safely be accepted as evidence of what another probably did."); House Committee on the Judiciary, Federal Rules of Evidence, H.R.Rep. No. 650, 93d Cong., 1st Sess. 13, *reprinted in,* 28 U.S.C.A.Fed. R.Evid. 803 Historical Note (state-of-mind exception to federal hearsay rule intended to allow hearsay going to declarant's state of mind "only to prove his future conduct, not the future conduct of another person"); Maguire, The Hillmon Case—Thirty-three Years After, 38 *Harv.L.Rev.,* 709, 717 (1925) ("It is not customary to accept one man's extrajudicial assertions as evidence of another's mental state.").[4] The trial court thus served a legitimate state inter-

nesses' errors of perception, false recall and lack of candor affect nonhearsay as well as hearsay evidence.

3. The testimony proffered by Johnson here was thus far less reliable than the evidence that the Court required to be admitted in *Chambers.* The excluded evidence in *Chambers* "provided considerable assurance of ... reliability": each of the declarant's three confessions was made spontaneously to a close acquaintance soon after the murder had occurred; each confession was also undeniably against the declarant's interest; and the declarant was available as a witness. 410 U.S. at 300–01, 93 S.Ct. at 1048; *see also, Sharlow v. Israel,* 767 F.2d 373, 379 (7th Cir.1985) (critical testimony failed to meet any of the criteria mentioned in *Chambers* ).

4. We do not mean to suggest that the position of Illinois courts is unanimously held. Several courts, including this one, have held that reliable evidence relating to a declarant's state of mind can sometimes be used as circumstantial proof of another person's conduct. *See, e.g., Kemnitz v. United States,* 369 F.2d 389, 391 (7th Cir.1966) (supervisor's instruction to driver that he need not maintain the normal time schedule admissible to show that driver was not under pressure to drive more quickly than conditions would safely permit); *United States v. Pheaster,* 544 F.2d 353, 374–80 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977) (hearsay statement that declarant was going to meet "Angello" admissible to show that Angello met the declarant); *United States v. Annunziato,* 293 F.2d 373, 377–78 (2d Cir.) (hearsay statement of employer that defendant had requested money and that employer intended to pay admissible in prosecution for receiving illegal payments from an employer, where the statements were recently made, within declarant's personal knowledge and integrally included in the declaration of design), *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961). *See generally* 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 803(3)[04] at 803–119 (favoring "flexible" approach where declarant states intention to act jointly with party whose subsequent actions are at issue, but noting that "the judiciary has been extremely circumspect about relying on [the federal state-of-mind exception] when the action of a person other than the declarant is involved."). The existence of disagreement on the proper boundaries of the state-of-mind exception, however, does not negate Illinois' interest in applying its own rule.

est when it ruled against Johnson's hearsay evidence.

Turning to the other side of the balance, Johnson has failed to show that the excluded evidence was critical to his defense. It is possible that evidence going to the very heart of the prosecution's case would overcome a state's interest in excluding even evidence as fraught with unreliability as the hearsay that Johnson seeks to present. We do not need to delineate the precise level of relevance that would be required, however, since Johnson has not approached the necessary showing. The testimony that Johnson sought to have admitted could, at most, have persuaded a jury that Larry T. had threatened Mitchell and that Mitchell was alarmed by this threat. But establishing that such a threat was made— in a business where parties must routinely depend on such extralegal means of enforcing contracts—would not have undermined the compelling case that the prosecutor marshalled against Johnson. The excluded hearsay could not have significantly diminished the probative weight of the testimony and records linking Johnson to the murder weapon (including the testimony concerning his efforts to conceal his retrieval of the weapon from Crain),[5] Michael Herriford's eyewitness testimony or the testimony that Johnson had changed his alibi. Thus, even if we disregarded its unreliability, the excluded hearsay was still insufficiently exculpatory for this court to mandate its admission.

### IV.

We conclude that Illinois' interest in applying its evidentiary rules to exclude untrustworthy evidence substantially outweighs Johnson's right to present the out-of-court statements at issue in this case. Illinois did not "mechanistically" apply its hearsay rule "to defeat the ends of justice." *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049. The excluded testimony, the uncorroborated statement of a single witness

about Mitchell's fears, was intrinsically unreliable as evidence of Larry T.'s subsequent actions. In view of the strong evidence against Johnson, it also lacked the exculpatory significance necessary to support a due process or sixth amendment claim. The trial court committed no error in excluding this evidence.

The district court's denial of Johnson's petition for a writ of habeas corpus is

AFFIRMED.

---

5. Johnson attempts to connect Larry T. to his explanation for retrieving the gun from Crain by suggesting that McCreary, whom Johnson identifies as the purchaser of the gun, worked for Larry T. In view of McCreary's testimony denying the purchase and Crain's testimony that Johnson assured him after the murder that the gun was in a "safe place," this purported connection does not, in our view, materially increase the significance of the excluded hearsay.