808 So.2d 1143 (2001)
Ex parte Roy Edward PERKINS.
(Re Roy Edward Perkins v. State).
1991016.
Supreme Court of Alabama.
March 30, 2001.
Concurring Opinion on Overruling of Rehearing July 13, 2001.
*1144 Andrew A. Smith, Northport; and Tanya Greene, Atlanta, Georgia, for petitioner.
Bill Pryor, atty. gen., and A. Vernon Barnett IV, asst. atty. gen., for respondent.
STUART, Justice.[1]
Roy Edward Perkins was convicted of murder made capital because it was committed during the course of a first-degree kidnapping, see § 13A-5-40(a)(1), Ala. Code 1975. The jury, by a vote of 10-2, recommended that Perkins be sentenced to death. The trial court accepted the jury's recommendation and sentenced Perkins to death. The Court of Criminal Appeals affirmed the conviction and the sentence. See Perkins v. State, 808 So.2d 1041 (Ala.Crim.App.1999). We granted certiorari review.
For a recitation of the facts, see Perkins v. State, 808 So.2d at 1052.
Perkins raises 37 issues for this Court to review. The Court of Criminal Appeals issued an extensive opinion thoroughly addressing the issues raised by Perkins. This Court has also considered all of the issues raised, and it has reviewed the record for plain error that may not have been raised. We find no error, plain or otherwise.
Pursuant to § 13A-5-53, Ala.Code 1975, this Court has reviewed this case for any error in regard to the conviction, and it has considered the propriety of the death sentence.
The trial court found the existence of three statutory aggravating circumstances:
"1. The capital offense was committed by a person under sentence of imprisonment, see § 13A-5-49(1), Ala.Code 1975;
"2. Perkins was previously convicted of another felony involving the use or threat of violence to the other person, see § 13A-5-49(2), Ala.Code 1975; and
"3. The capital offense was committed while Perkins was engaged in the commission of, or an attempt to commit, or flight after committing, or attempting to commit kidnapping, see § 13A-5-49(3), Ala.Code 1975."
The trial court found the existence of one statutory mitigating circumstance:
"Perkins's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, see § 13A-5-51(6), Ala.Code 1975."
The trial court found the existence of seven nonstatutory mitigating circumstances:
"1. Defendant took victim near Ms. Hood's house. However, victim said she'd been shot an hour earlier. This *1145 was a belated act, at best, and Defendant may have been merely getting rid of the victim.
"2. Defendant was drinking alcohol, taking pills and abusing drugs during the general period of time of this offense. However, this was voluntary.
"3. Defendant suffers from borderline personality disorder, is an alcoholic, is of borderline intelligence, and probably has organic brain dysfunction.
"4. Defendant was under mental or emotional disturbance, although not to an extreme degree.
"5. Defendant lacked socialization and had a horrible childhood, involving the death of this father, the drowning of his brother in his presence, the sexual abuse of his sister by his stepfather in his presence, physical abuse of Defendant by his stepfather, being run away from home at a very early age and being sexually abused.
"6. Defendant's intelligence is below 92% of the population, and he has a full scale I.Q. of 76.
"7. Defendant and his family were very poor, and Defendant had to `raise himself.' His mother and stepfather and other family members were alcoholics."
(C.R.352-53.)
The record reflects that the trial court weighed the aggravating circumstances against the statutory and nonstatutory mitigating circumstances and found that the aggravating circumstances greatly outweighed those mitigating circumstances and sentenced Perkins to death.
This Court has carefully searched the entire record for error, plain or otherwise, that would have adversely affected Perkins's substantial rights. It has found none. We have also reviewed the briefs and considered all the issues raised by Perkins, and we have reviewed the record of the guilt phase and the penalty phase of the trial. We conclude that Perkins received a fair trial.
After carefully reviewing the record, this Court has found no evidence to indicate that Perkins's sentence of death "was imposed under the influence of passion, prejudice, or any other arbitrary factor." See § 13A-5-53(b)(1), Ala. Code 1975. This Court, pursuant to § 13A-5-53(b)(2), has independently weighed the aggravating circumstances and the statutory and nonstatutory mitigating circumstances to determine the propriety of Perkins's sentence of death. After that independent weighing, this Court concludes that death is the appropriate sentence in this case. Perkins's sentence is not disproportionate or excessive when compared to the sentences imposed in similar capital cases.
The judgment of the Court of Criminal Appeals affirming Perkins's conviction and death sentence is affirmed.
AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.

On Application for Rehearing
STUART, Justice.
APPLICATION OVERRULED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in the result.
JOHNSTONE, Justice (concurring in the result).
I concur to overrule the application for rehearing. I would, however, extend the original opinion to address several aspects *1146 of the review by the Court of Criminal Appeals.
First, the Court of Criminal Appeals judged certain autopsy photographs of the victim to be admissible without even looking at them. Perkins, in his brief to the Court of Criminal Appeals, objected to the photographs in the following language:
"The district attorney was permitted to offer ghoulish color autopsy photographs and, over objection (R. 2142), projected slides (State's Exhibits 56 and 94) depicting an entry bullet wound in the victim's mid-section that had been manipulated, or `reapproximated,' by the hands of the pathologist who performed the autopsy. (R. 2128, 2145). The prosecutor also displayed to the jury and introduced a host of other photographs and, over objection (R. 2142), projected slides of the victim's autopsied body. (R. 2117-29, 2144-49). The photographs and slides were inflammatory and impermissibly duplicative of one another, and S-56 and S-93 were irrelevant to proving any part of the prosecution's case.
The admission of gruesome, inflammatory evidence is improper where such evidence is not relevant to prove a material issue. Ex parte Bankhead, 585 So.2d 112, 118 (Ala.1991). `Courts have been almost universal in their condemnation of admitting photographs depicting the victim's body after it has been subject to autopsy procedures.' State v. Clawson, 165 W.Va. 588, 609, 270 S.E.2d 659, 672 (1980). Such autopsy photographs do not bear on the only pertinent question at the guilt-innocence phase, i.e., whether the defendant committed the charged offense, and they go impermissibly beyond illustrating the actual damage wrought by the defendant. This is especially true in this case of the photographs and slides depicting the fatal wound (S-56, 94), which had been manipulated by the state's pathologist to reveal the grisly inner portion of the orifice. Many jurisdictions have granted relief based on the introduction of such irrelevant and gruesome autopsy pictures, and the same relief is due Mr. Perkins here. See Brown v. State, 250 Ga. 862, 302 S.E.2d 347, 351 (1983) (photograph depicting `the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist ... has no ... relevance and may cause confusion, if not prejudice, in the minds of jurors. Thus the admission of state's exhibit 5 in this case was reversible error.'); Long v. State, 823 S.W.2d 259, 274 (Tex.Cr.App. 1991) (`probative value' of gruesome autopsy photographs `is not substantially out-weighed by their prejudicial nature. Thus we hold that the trial court erred in admitting the same.'), cert. denied, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); Jones v. State, 738 P.2d 525, 528 (Okla.Cr.App.1987) (admission of two color photos of victim's body `added virtually nothing to the State's submission of proof, and served no other purpose than to inflame the jury. The trial court's admission of these two photographs was error.'). Accord State v. Lockett, 249 N.J.Super. 428, 592 A.2d 617, 619 (N.J.Super), cert. denied, 127 N.J. 553, 606 A.2d 366 (N.J.1991); People v. Coleman, 116 Ill.App.3d 28, 451 N.E.2d 973, 977, 71 Ill.Dec. 819 (1983), cert. denied, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987); Rosa v. State, 412 So.2d 891, 892 (Fla.App.1982); Commonwealth v. Richmond, 371 Mass. 563, 358 N.E.2d 999, 1001 (1976); State v. Childers, 217 Kan. 410, 536 P.2d 1349, 1354 (1975)."
Rule 401, Ala.R.Evid., provides:
"`Relevant evidence' means evidence having any tendency to make the existence *1147 of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Rule 403, Ala.R.Evid., provides:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
While Perkins did not object to the photographs at trial, his brief raised the issue; and § 12-22-240, Ala.Code 1975, and Rule 45A, Ala.R.App.P., required the Court of Criminal Appeals to determine whether the admission of the photographs constituted plain error.
Part XX of the opinion of the Court of Criminal Appeals relies on the testimony of the pathologist who performed the autopsy and the argument by the State to hold that the admission of the photographs did not constitute "error, plain or otherwise." Perkins v. State, 808 So.2d 1041, 1059 (Ala.Crim.App.1999). What the opinion of the Court of Criminal Appeals does not reveal is that it disposed of this issue without even getting the photographs or even photocopies of the photographs from the trial court, which, pursuant to some practice or interpretation of Rule 10(c)(1), Ala.R.App.P., kept the photographs and did not even include photocopies of them in the materials transmitted to the Court of Criminal Appeals, even though the photographs were an official part of the record on appeal. The trial court, which had never transmitted these photographs to the Court of Criminal Appeals, transmitted them directly to us at our request when we were conducting our certiorari review.
On the one hand, my personal viewing of these photographs satisfies me that their admission did not constitute plain error. The incision by the emergency care physicians did not affect the visibility of the stab wound at all, did not entirely obscure the visibility of the bullet wound, and did not so mutilate the victim's body as to overpower the probative value of the photographs. The photographs depict only the one incision, a few inches long, made by the emergency care physicians. It was partially sutured. None of the photographs depicts incisions made during the autopsy itself. On the other hand, this sort of evaluation and judgment can be made only by seeing the photographs. When a defendant condemned to death challenges the introduction of a photograph, the appellate courts should get it and view it to judge its admissibility.
Second, the legal analysis by the Court of Criminal Appeals, still in part XX of its opinion, contains this fallacy: "Perpetrators of crimes that result in gruesome scenes have reason to expect that photographs of those gruesome scenes will be taken and admitted into evidence." Perkins v. State, 808 So.2d at 1108. This Court has condemned this fallacy on at least three occasions. Ex parte Duncan, [Ms. 1990652, March 30, 2001] ___ So.2d ___ (Ala.2001); Ex parte Loggins, 771 So.2d 1093 (Ala.2000); and Ex parte Samra, 771 So.2d 1122, n. 1. (Ala.2000). See also Ex parte McWhorter, 781 So.2d 330 (Ala.2000) (Johnstone, J., concurring in part and concurring in the result in part). This fallacy begs the question by assuming the defendant's guilt for the purpose of judging the admissibility of evidence offered to prove the defendant's guilt. Ex parte Duncan, supra; and Ex parte McWhorter, supra.
Finally, in part XVI.B of its opinion, the Court of Criminal Appeals errs in its analysis of certain hearsay testimony. The *1148 State had introduced evidence that the defendant had not only committed the charged violence against the particular victim in this particular case but also that the defendant had raped two other women, B.P. and D.W., who had testified that he had raped them in a white building in a certain wooded area. The State then introduced the testimony of former Deputy Sheriff J.W. Stough that he had learned the precise location of the white building "from [still] another victim, a rape victim." Perkins v. State, 808 So.2d at 1097. The Court of Criminal Appeals rationalizes the admission of this testimony as follows:
"[I]t was offered to explain how Stough determined the location of the building, which he later searched. A statement may be admissible where it is not offered to prove the truth of whatever facts might be stated, but rather to establish the reason for action or conduct by the witness."
Perkins v. State, 808 So.2d at 1097. (Citations and internal quotation marks omitted.). Former Deputy Stough's testimony to this effect was admitted for the truth of the matter stated. The relevancy of his testimony about the particular building he found depended entirely on its being the location where the defendant raped women, a fact which the "other" rape victim's out-of-court declaration to former Deputy Stough tended to prove. See Perkins v. State, 808 So.2d at 1097. Moreover, "the reason for action or conduct by the witness," former Deputy Stough, was not an issue in the case. Thus the introduction of this evidence over a proper objection would have constituted a hearsay error. Absent a proper objection at trial, however, the admission of this testimony does not meet the stringent criteria for plain error.
NOTES
[1] This case was originally assigned to another Justice; it was reassigned to Justice Stuart on January 16, 2001; although Justice Stuart was not a member of this Court when this case was orally argued, she has listened to an audiotape of the argument.