THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN GALVAN, Defendant-Appellant.

First District (4th Division)  No. 1—90—2094

Opinion filed March 31, 1993.—Rehearing denied May 13, 1993.

Frederick F. Cohn, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Jeanne Lobelson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

Following a jury trial the defendant, John Galvan, age 18 at the time, was convicted of aggravated arson and the murder of two persons who died in the fire. He was sentenced to natural life imprisonment without parole. He contends on appeal: (1) the court erred in denying a motion to suppress his statement; (2) the court improperly excluded evidence during the hearing on the motion to suppress which showed lack of probable cause; (3) the court improperly limited the cross-examination of the detective who questioned the defendant; (4) the prosecutor improperly argued that witnesses feared the defendant; (5) the prosecutor presented improper and prejudicial evidence; (6) the court erred in denying the defendant the opportunity to offer evidence of the motives of other persons to commit the arson; (7) the aggravated arson statute is unconstitutional; and (8) the statute mandating a life sentence is unconstitutional. We affirm.

On September 21, 1986, at approximately 4 a.m., a fire swept through a house on 24th Place in Chicago. Two young men, trapped in an attic bedroom, died. Investigators suspected arson.

Nine months later, in June 1987, the police spoke to Rene Rodriguez, who told them that he and two of his friends, Jose Ramirez and Francisco Partida, were watching the fire on September 21 when he saw the defendant, the defendant's brother, and another person named "Michael" also watching the fire.

The police then spoke to Jose Ramirez, who told them that seconds before the fire started he saw the defendant with a person named "Michael" and two other men walking together about a half block away from the house on 24th Place. Two of them turned around and looked at Ramirez. He recognized the defendant and Michael, who put the hood of his sweatshirt over his head when Ramirez

looked at him. Within seconds of seeing the four men walk away, Ramirez heard an explosion and screams and saw the house on fire. The police showed Ramirez photographs, and he identified a picture of Michael Almendarez as the "Michael" he saw walking away from the house on the morning of the fire.

Michael Almendarez was brought to the station to be interviewed. The police advised him of his constitutional rights and told him that Ramirez said he saw him in the alley shortly before the fire started. Within three to five minutes after questioning began, Almendarez stated that the defendant and Francisco Nanez told him in October 1986 that they started the fire. He said that Nanez threw a beer bottle full of gasoline at the house and when it did not ignite, the defendant lit it with a cigarette. Almendarez said that he was not at the scene on the morning of the fire.

The police then arrested the defendant without a warrant, took him to the station, and advised him of his constitutional rights. Within an hour, the defendant admitted that he, Francisco Nanez, and Arthur Almendarez, Michael's brother, started the fire because they believed that rival gang members lived in the house. He said the gang members had shot at him weeks earlier and he wanted to scare them. He told the police that Almendarez and Nanez bought the gasoline, put it in an empty beer bottle, and put a cloth in the top of the bottle. Nanez lit the cloth and threw the bottle at the house, but it did not ignite. The defendant then threw a cigarette at the side of the house and started the fire.

Before trial the defendant filed motions to quash his arrest and suppress evidence. At a hearing on the issue of probable cause, the court ruled that the information Michael Almendarez gave the police was reliable and corroborated and that there was probable cause to arrest the defendant.

At trial two alibi witnesses testified that the defendant was asleep at his grandmother's house on the morning of the fire. The defendant also testified that he was at his grandmother's house and that he signed his confession under duress. The jury convicted him of all counts.

The defendant first contends on appeal that the court erred in denying his motions to quash arrest and to suppress evidence. He argues that the arrest, made without a warrant, was based on the statement of Michael Almendarez and that his statement was not sufficient to constitute probable cause because Almendarez was a suspect and not credible. We disagree.

Probable cause to arrest exists when the facts and circumstances known by the police justify a reasonable belief that the person to be arrested has committed a crime. (*People v. Pierson* (1988), 166 Ill. App. 3d 558, 562, 519 N.E.2d 1185, 1188.) In this case, the police, before they arrested the defendant, were told by two people in addition to Almendarez that the defendant was at the scene on the night of the fire. Ramirez said he saw the defendant walking away from the house seconds before the fire. Rodriguez said he saw the defendant watching the fire. Almendarez told the police that the defendant admitted to him that he started the fire. When the information given by Almendarez corroborated what the police already knew, they arrested the defendant.

■ Information relied upon to establish probable cause to arrest must be supported by some "indicia" of reliability. (*People v. James* (1987), 118 Ill. 2d 214, 222, 514 N.E.2d 998, 1000.) This court will not reverse a trial court's finding of probable cause to arrest unless it is manifestly erroneous. (*People v. Trice* (1991), 217 Ill. App. 3d 967, 974, 577 N.E.2d 1195, 1198.) The trial court decided that Almendarez was reliable because he was an identified person who had no criminal background and no motivation to lie. The court also decided that the defendant failed to show that Almendarez was coerced into making the statement. Almendarez implicated the defendant within five minutes after he began talking to the police. Although he was read his constitutional rights, he was not handcuffed and was not arrested. Detective Switski, who questioned Almendarez, testified that Almendarez was a possible suspect. We find no error in the trial court's ruling based on this testimony.

■ The defendant next argues that the court excluded evidence at the hearing which tended to show lack of probable cause. He contends that the court abused its discretion when it excluded evidence of whether or not Almendarez was handcuffed on the way to the police station, evidence of how long Almendarez was at the station that night, evidence of how long Almendarez was at the station before he told them the defendant started the fire, and evidence that the police told Almendarez that they had witnesses who would put him "behind bars." But the record shows that Almendarez testified he was not handcuffed and that he was in the interrogation room for eight hours that night. Also, Detective Switski testified that Almendarez implicated the defendant within three to five minutes after questioning began. As to the denial of Almendarez's comment that the police told him that they had witnesses who would put him "behind bars," the court has discretion whether to admit evidence and its decision will

not be reversed absent a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Lucas* (1992), 151 Ill. 2d 461, 603 N.E.2d 460.) Here the statement was offered without any foundation as to who said it. We find that the trial court did not abuse its discretion when it denied this testimony.

█ The defendant's third argument is that the court limited the cross-examination of Detective Switski during the trial when it sustained objections to two questions: (1) "[H]ow many suspects have you interrogated in your years on the police department?" and (2) "Do you feel yourself an experienced interviewer of suspects?" He argues that the court prevented him from presenting the theory that his confession was coerced because the defendant was only 18 when he was interrogated and the detective was an experienced officer who brought undue pressure on the youth. We find that the background of the police detective was adequately explored. Defense counsel asked the detective about his history as a police officer, his training, the courses he took, the number of cases he handled in a year, and how long he had worked for the force. The court allowed the defendant to sufficiently cross-examine the detective about his experience and did not abuse its discretion when it sustained objections to the two questions. *Lucas*, 151 Ill. 2d 461, 603 N.E.2d 460.

The fourth issue raised by the defendant is that the prosecutor made a comment during closing argument that denied him a fair trial. In his closing argument the defense attorney asked rhetorically why Rodriguez and Partida, the other men who were with Ramirez on the night of the fire, did not testify. The prosecutor in rebuttal said, "I would suggest to you that, maybe, like Jose Ramirez, they're scared to death, and if he wants them, if he thinks he can add anything, all he's got to do is *** issue a subpoena."

The defendant relies on *People v. Mullen* (1990), 141 Ill. 2d 394, 366 N.E.2d 222, for the holding that a prosecutor's comments suggesting that witnesses were afraid to testify because the defendant threatened them are prejudicial and inflammatory when the comments are not based on any evidence in the record.

█ In this case the prosecutor did not claim that the defendant threatened anybody. He stated that Rodriguez and Partida were, like Ramirez, scared to testify. The prosecutor's comment regarding Ramirez's fear was based upon testimony in evidence. Ramirez testified that he did not tell the police what he saw until he was asked nine months later because, "I was afraid what happened to that house might happen to mine and my family." Detective Switski testified that he interviewed Ramirez in the basement of the police station because

Ramirez did not want to be seen. This evidence was allowed to explain why Ramirez did not tell the police what happened until nine months after the fire.

Prosecutors are allowed wide latitude in closing argument, and improper remarks will not merit reversal unless they result in substantial prejudice to the defendant. (*People v. Ray* (1984), 126 Ill. App. 3d 656, 663, 467 N.E.2d 1078, 1083.) We find that the defendant was not substantially prejudiced by the prosecutor's comment during rebuttal argument.

In addition, while it is generally improper for a prosecutor to comment on the defendant's failure to call witnesses, it is proper to make such comments if invited by an earlier argument by defense counsel. (*People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1073-74, 401 N.E.2d 1069, 1074.) Here the prosecutor was responding directly to defense counsel's argument and properly commented that the defendant could have subpoenaed Rodriguez and Partida.

■ The defendant's fifth argument is that the prosecutor presented three pieces of improper evidence which denied him his right of confrontation. He argues that the court allowed impermissible hearsay when the detective testified that he intensified his efforts to find the defendant after he spoke to Michael Almendarez. However, the defendant did not object to this alleged improper testimony at trial and did not raise the issue in his post-trial motion. The issue is waived. *People v. Pastorino* (1982), 91 Ill. 2d 178, 193, 435 N.E.2d 1144, 1151.

■ The defendant also contends that his right to confrontation was violated when the court allowed evidence that codefendant Nanez made a statement. The jury, he suggests, would necessarily infer that Nanez's statement corroborated the defendant's statement. This assertion is speculative and unsupported by the record based upon our review of the following testimony by the assistant State's Attorney who took the recorded statements of the defendant and the codefendants:

"Q. [A]t 11:05 p.m., on June 8, 1987, who did you take a court reported statement of, at that time?

A. Francisco Nanez.

Q. After finishing that court reported statement of Francisco Nanez, what did you do?

A. After we finished that statement, the court reporter proceeded to take the tapes that came out of her machine, and she typed the statements up for both, Nanez and Galvan."

In *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234, the court held that testimony recounting the steps taken in an investigation is admissible and does not violate the sixth amendment as long as the testimony does not reveal the substance of the statement. In this case the defense raised an issue that 10 hours passed from when the investigators claimed the defendant orally confessed to when his statement was reduced to writing. The State offered evidence to show that once the defendant orally confessed the assistant State's Attorney then questioned the codefendants. That Nanez made a statement was offered to show the course of the assistant State's Attorney's investigation. The substance of the statement was not presented, nor was it revealed to be inculpatory. The trial court did not err when it allowed the fact of the statement in evidence.

■ The defendant further argues that he was prejudiced when the prosecutor asked Ramirez on direct examination if he told the jury the same thing he told the police before trial. However, the defendant objected at trial, the court sustained the objection, and subsequently instructed the jury to disregard the remark. Even if the prosecutor's remark was improper, any error was cured. *People v. Rowe* (1983), 115 Ill. App. 3d 322, 327, 450 N.E.2d 804, 808.

■ The sixth issue the defendant raises is that the trial court erred when it denied him the opportunity to call witnesses who would testify that "other people" threatened to burn the same house the defendant was accused of burning. Such evidence is relevant and admissible only when a close connection can be demonstrated between the evidence offered and the commission of the offense; remote conduct of a person not connected with the crime may not be shown. (*People v. King* (1978), 61 Ill. App. 3d 49, 52, 377 N.E.2d 856, 859.) The defendant here does not identify any people, evidence, or testimony. He fails to establish a connection between the "other people" and the fire and offers no evidence of motive, physical description, or location of these people at the time of the crime. (See *People v. Maberry* (1990), 193 Ill. App. 3d 250, 263, 549 N.E.2d 974, 983.) We find that the trial court properly denied the defendant's request.

■ We reject the defendant's seventh contention that his conviction based on the aggravated arson statute is void because the statute does not require a standard of actual knowledge. The statute states in applicable part:

> "A person commits aggravated arson when *** he knows or reasonably should know that one or more persons are present therein ***." Ill. Rev. Stat. 1991, ch. 38, par. 20—1.1.

This court has previously considered the argument presented by the defendant and has held the language to be constitutional. *People v. Williams* (1992), 228 Ill. App. 3d 163, 592 N.E.2d 514.

●■ We also reject the defendant's eighth contention that the felony sentencing statute is unconstitutional. This statute provides in applicable part:

"[I]f the defendant *** is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment." Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(c).

The Illinois Supreme Court has held that a sentence of natural life imprisonment upon conviction of murdering more than one victim is constitutional. *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059.

●■ The defendant finally argues that a sentence of life imprisonment without parole is comparable to the death penalty and that it should not be imposed without considering mitigating factors that apply to imposition of the death penalty. The Supreme Court in *Harmelin v. Michigan* (1991), 501 U.S. 957, 115 L. Ed. 2d 836, 111 S. Ct. 2680, held that a mandatory life sentence without possibility of parole "cannot be compared with death." The Court refused to extend the "individualized capital sentencing doctrine" to an "individualized mandatory life in prison without parole sentencing doctrine." *Harmelin*, 501 U.S. at 995, 115 L. Ed. 2d at 865, 111 S. Ct. at 2702. See also *Taylor*, 102 Ill. 2d 201, 464 N.E.2d 1059.

For the reasons stated, we affirm the defendant's conviction.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.