**UNITED STATES of America ex. rel. John GALVAN, Petitioner,**

v.

**Jerry GILMORE, Respondent.**

No. 97 C 2939.

United States District Court, N.D. Illinois, Eastern Division.

March 11, 1998.

---

Daniel W. Pisani, Kathleen T. Zellner and Associates, Naperville, IL, Kathleen T. Zellner, Naperville, IL, for Petitioner.

Bridget Linda Field, Arleen C. Anderson, Illinois Atty. Gen.'s Office, Criminal Appeals Div., Chicago, IL, for Respondent.

**1024**

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

John Galvan, a prisoner at Pontiac Correctional Center, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For reasons discussed below, the petition is denied.

## BACKGROUND [1]

On September 21, 1986, at approximately 4 a.m., a fire swept through a house on 24th Place in Chicago. Two young men, trapped in an attic bedroom, died. Investigators suspected arson.

Nine months later, in June 1987, the police spoke to Rene Rodriguez, who told them that he and two of his friends, Jose Ramirez and Francisco Partida, were watching the fire on September 21, 1986, when he saw Galvan, Galvan's brother and another person named "Michael" also watching the fire.

The police then spoke to Jose Ramirez, who told them that seconds before the fire started he saw the defendant with a person named "Michael" and two other men walking together about a half block away from the house on 24th Place. Two of them turned around and looked at Ramirez. He recognized the defendant and Michael, who put the hood of his sweatshirt over his head when Ramirez looked at him. Within seconds of seeing the four men walk away, Ramirez heard an explosion and screams, and saw the house on fire. The police showed Ramirez photographs, and he identified a picture of Michael Almendarez as the "Michael" he saw walking away from the house on the morning of the fire.

Michael Almendarez was brought to the station to be interviewed. The police advised him of his constitutional rights and told him that Ramirez said he saw him in the alley

shortly before the fire started. Within three to five minutes after questioning began, Almendarez stated that Galvan and Francisco Nanez told him in October 1986 that they started the fire. He said that Nanez threw a beer bottle full of gasoline at the house and when it did not ignite, Galvan lit it with a cigarette. Almendarez said he was not at the scene on the morning of the fire.

The police then arrested Galvan without a warrant, took him to the station, and advised him of his constitutional rights. Within an hour, Galvan admitted that he, Francisco Nanez, and Arthur Almendarez, Michael's brother, started the fire because they believed that rival gang members lived in the house. He said the gang members had shot at him weeks earlier and he wanted to scare them. He told the police that Almendarez and Nanez bought the gasoline, put it in an empty beer bottle, and put a cloth in the top of the bottle. Nanez lit the cloth and threw the bottle at the house, but it did not ignite. Galvan then threw a cigarette at the side of the house and started the fire.

Before trial, Galvan filed motions to quash his arrest and suppress evidence. At a hearing on the issue of probable cause, the court ruled that the information Michael Almendarez gave the police was reliable and corroborated, and that there was probable cause to arrest the defendant.

At trial, two alibi witnesses testified that Galvan was asleep at his grandmother's house on the morning of the fire. Galvan also testified that he was at his grandmother's house and that he signed his confession under duress.

On June 26, 1990, Galvan was convicted by a jury of aggravated arson and the murder of the two persons who died in the fire. He was sentenced to natural life imprisonment. He appealed his conviction to the Appellate

---

1. Our recital of the facts relevant to Galvan's petition is taken from the order of the Illinois Appellate Court in *People v. Galvan*, 244 Ill. App.3d 298, 185 Ill.Dec. 257, 614 N.E.2d 391 (1st Dist.1993), pursuant to 28 U.S.C. § 2254(e)(1). *See Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Our account of the relevant post-trial events is drawn from the briefs submitted in this case and is undisputed unless otherwise indicated. Al-

though Galvan submits a separate statement of facts, we find it merely amplifies the statement as recited by the Illinois Appellate Court—noting inconsistencies in testimony and placing emphasis on the statements of different witnesses rather than contradicting the facts as presented. To the extent that these additional facts are necessary to evaluate Galvan's substantive claims, we will address them when we turn to the merits of his petition.

Court of Illinois (No. 1–90–2094), raising the following issues for review: (1) the court erred in denying a motion to suppress his statement; (2) the court improperly excluded evidence during the hearing on the motion to suppress which showed lack of probable cause; (3) the court improperly limited the cross examination of the detective who questioned Galvan; (4) the prosecutor improperly argued that witnesses feared Galvan; (5) the prosecutor presented improper and prejudicial evidence; (6) the court erred in denying Galvan the opportunity to offer evidence of motives of other persons to commit the arson; (7) the aggravated arson statute is unconstitutional; and (8) the statute mandating a life sentence is unconstitutional. The appellate court affirmed the conviction on March 31, 1993, *People v. Galvan*, 244 Ill. App.3d 298, 185 Ill.Dec. 257, 614 N.E.2d 391 (1st Dist.1993), and denied rehearing on May 31, 1993. Galvan filed a motion for leave before the Illinois Supreme Court, which was denied on October 6, 1993. *People v. Galvan*, 152 Ill.2d 567, 190 Ill.Dec. 898, 622 N.E.2d 1215 (1993).

On September 14, 1995, Galvan filed a petition for post-conviction hearing, for vacation of sentence and for a new trial. On March 29, 1996, Galvan was granted leave to file an amended petition for post-conviction relief, in which he argued that (1) he was denied the effective assistance of trial counsel, and (2) the state knowingly used perjured testimony. The trial court dismissed the petition without an evidentiary hearing, finding that the petition was not timely filed under 725 ILCS 5/122. On March 12, 1997, the appellate court affirmed the dismissal. He did not file a petition for leave to appeal.

Instead, on April 24, 1997, he filed the instant petition for writ of habeas corpus, arguing that (1) he was denied effective assistance of counsel (Claim I); (2) he was denied due process of law when the prosecution knowingly used perjured testimony (Claim II); (3) his Fourth Amendment rights were violated when the police arrested him without probable cause (Claim III); (4) his Fifth, Sixth and Fourteenth Amendment rights were violated when the state trial court excluded certain evidence of motive (Claim IV); (5) his Fifth and Sixth Amendment rights were denied when the state trial court excluded evidence relevant to the issue of probable cause (Claim V); and (6) his right of confrontation was denied when the prosecution presented statements made by non-testifying witnesses (Claim VI).

## DISCUSSION

### I. Statute of Limitations and Procedural Default

Before we reach the merits of the claims advanced we must determine whether the petitioner has cleared various procedural hurdles. First, we must determine the applicability of the one-year limitations period set forth in 28 U.S.C. § 2244(d). The Antiterrorism and Effective Death Penalty Act of 1996(Act), amended 28 U.S.C. § 2244 to place a one-year limitation on the filing of a petition for a writ of habeas corpus under § 2254.[2] In *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996), *rev'd on other grounds*, ——

---

**2.** Under § 2244(d):

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the of a State court. The limitation period shall run from the latest of—
 (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

 (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
 (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
28 U.S.C. § 2244(d).

**1026**

U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (*en banc*), the Seventh Circuit found that prisoners who sought to challenge state court judgments made final prior to April 24, 1996 (the effective date of the Act), had a "reasonable time" after that date to file § 2254 petitions. *Lindh,* 96 F.3d at 866. The reasonable time set by the court followed the amendment to § 2244 and gave such prisoners until April 23, 1997, to file their petitions. *Id.*

■ Normally, we would apply the grace period set forth in *Lindh* in order to determine whether Galvan filed this habeas petition on or before April 23, 1997 (in this case he was a day late). However, since § 2244(d) does not affect this court's subject matter jurisdiction over habeas petitions, *see Calderon v. United States District Court,* 128 F.3d 1283, 1288 (9th Cir.1997), *cert. denied,* —— U.S.——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998); *Parker v. Bowersox,* 975 F.Supp. 1251, 1252 (W.D.Mo.1997), the state can waive the § 2244(d) timeliness issue by failing to raise it. *See, e.g., Anderson v. Flexel, Inc.,* 47 F.3d 243, 247 (7th Cir.1995) (finding that defendant waived statute of limitations defense by his failure to timely raise the issue). Therefore, since the state did not raise the § 2244(d) limitations argument in this case, we find that it has been waived.

■ Next, we turn to the issue of procedural default, which the state contends bars our review of several of Galvan's habeas claims. "Before a federal court may review the merits of a claim raised by a state prisoner in a habeas petition, the petitioner must fulfill the procedural requirements set by state law for seeking judicial review in the state courts." *Lemons v. O'Sullivan,* 54 F.3d 357, 360 (7th Cir.1995), *cert. denied,* 516 U.S. 993, 116 S.Ct. 528, 133 L.Ed.2d 434 (1995). Forfeiture of a claim under § 2254 "is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir.1996). Procedural default may occur in one of two ways. First, the petitioner may fail to raise fairly and properly an issue on direct appeal or post-conviction review. *Rodriguez v. Peters,* 63 F.3d 546, 555 (7th Cir.1995). Alternatively, procedural default occurs when the state court clearly relies on a state procedural bar as an independent basis for its denial of relief. *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). A petitioner may raise a procedurally defaulted claim in a habeas proceeding only by showing good cause for the default and actual prejudice stemming from the default. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

The state argues that Galvan has procedurally defaulted his claims of ineffective assistance of counsel (Claim I), perjury/due process violation (Claim II), wrongful exclusion of evidence (Claim V), and confrontation clause violation (Claim VI). Because the state offers different procedural default arguments with respect to these claims, we will address each in turn.

With respect to Claims I and II, the state first contends that Galvan has waived these claims by his failure to timely raise them in his post-conviction petition. Galvan filed his original post-conviction petition on September 14, 1995, and his amended petition on March 25, 1996. In his amended petition, Galvan claimed for the first time that (1) he was denied effective assistance of counsel, and (2) he was denied due process when the state knowingly used perjured testimony. Specifically, Galvan argued (as he does again in his habeas petition) that he was denied ineffective assistance of counsel when his trial attorney failed to call a critical witness, Frank Partida, who would have directly contradicted the testimony of prosecution witness Jose Ramirez. At trial, Ramirez identified Galvan in the vicinity of the house that was set on fire immediately before the fire started. Partida was with Ramirez at the time, but stated that he could not specifically identify anyone due to the poor lighting and extreme distance. Galvan also argued that the state's knowing use of Ramirez's testimony (which Galvan claimed were false in light of Partida's statements) constituted subornation of perjury in violation of his due process rights.

The trial court denied Galvan's petition, finding that it was untimely under 725 ILCS 5/122, and also that both of his claims failed on the merits (Resp.Ans.Ex.H). The Illinois Appellate Court affirmed this decision, finding that the trial court's opinion "provides an ample basis to deny [Galvan's] post-conviction relief on the basis that the post-conviction petition was not timely filed (citations omitted), and, in any event defendant's allegations about the testimony of one potential witness ... would [not] have changed the outcome of the trial" (Resp.Ans.Ex. L at 2).

The state now argues that Galvan's failure to timely file his post-conviction petition was a procedural default that constituted an independent and adequate state ground sufficient to preclude our consideration of the merits of these claims. *See Cawley v. DeTella,* 71 F.3d 691, 695 (7th Cir.1995). However, for a state ground to be considered an "independent and adequate" one upon which a procedural default can be based, the state court must "clearly and expressly" rely on such a state ground. *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A federal court reviewing a habeas petition shall presume that no such independent and adequate state ground exists for the state court decision "when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Id.* We find that in this case, although the state determined that Galvan's untimely post-conviction petition was not excused, it nevertheless proceeded to consider the merits of Galvan's petition, ultimately resting its denial of the petition on the lack of merit of Galvan's claims. The state appellate court recognized this, at least insofar as the trial court rejected Galvan's due process claim on the merits. Thus, since the state court did not clearly and expressly base its decision on Galvan's procedural default, but instead considered and resolved the merits of the claims presented, an independent and adequate state ground does not support the decision. *See U.S. ex rel. Chapman v. De-Tella,* No. 97–C–2893, 1998 WL 25762, *6 (N.D.Ill. Jan.9, 1998).

The state next argues that Galvan has defaulted Claims I and II since he did not appeal the appellate court's denial of his post-conviction petition and therefore failed to properly present these claims to the highest state court. The Seventh Circuit has held that a petitioner who fails to appeal his post-conviction claims to the highest state court normally defaults those claims for the purposes of habeas review. *Cawley,* 71 F.3d at 694–95. We follow *Cawley* in finding that Galvan has forfeited all claims raised in his post-conviction petition and not appealed to the Illinois Supreme Court. However, we note that it is with some hesitation that we make this decision, as the Seventh Circuit's holdings with respect to the issue of procedural default have generated confusion on this point.

Specifically, the Seventh Circuit's case law has created a dichotomy between procedural default on direct and post-conviction review that is difficult to reconcile with the underlying justifications for the procedural default rule. In *Hogan,* for example, the court overruled *Nutall v. Greer,* 764 F.2d 462, 463–64 (7th Cir.1985) (holding that petitioner forfeits the right to habeas relief if he does not seek review in the state's highest court of all the claims presented in his habeas petition), and found that a petitioner's failure to present his claim to the state supreme court on direct review is not necessarily a bar to seeking federal habeas review. 74 F.3d at 147. The court emphasized that the standard was whether "state courts either have held that a procedural misstep is a forfeiture, or would so hold if a collateral attack were filed in state court," and held that the petitioner's failure to appeal an issue to the Indiana Supreme Court did not constitute procedural default. *Id.* In *Gomez v. Acevedo,* 106 F.3d 192, 196 (7th Cir.1997), *vacated on other grounds,* —— U.S. ——, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997), the Seventh Circuit extended *Hogan* to Illinois. In *Gomez,* the court held that a habeas petitioner who had failed to include a claim in his petition to the Illinois Supreme Court had not defaulted that claim for the purposes of habeas review. *Id.; see also, U.S. ex rel. Harris v. Godinez,* No. 93–C–6709, 1997 WL 610054, *5–6 (N.D.Ill. Sept.26, 1997). The court justified its holding by noting that, although Illinois courts

would find petitioner's claim barred on state post-conviction review, the basis of this bar would be *res judicata,* and not procedural default. *Id.*

Recently, the Seventh Circuit has added another layer to the procedural default analysis. In *Boerckel v. O'Sullivan,* 135 F.3d 1194 (7th Cir.1998), the court was presented with yet another argument that petitioner had procedurally defaulted habeas claims by failing to include them in his petition for leave to appeal to the Illinois Supreme Court on direct review. The petitioner argued that he could not be found to have procedurally defaulted his claims since the last state court which rendered a judgment did not "clearly and expressly state" that it was resting its judgment on a procedural bar. *Id.* at 1198 (quoting *Coleman,* 501 U.S. at 735–36). The respondent argued that this "clear statement rule" was inapplicable where a petitioner failed to "exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 1199. The court stated that the critical issue was "whether the petitioner's refusal to include all his claims in his petition for leave to appeal to the Illinois Supreme Court constitutes a failure to exhaust his state court remedies, which thereby bars him from raising them in his habeas petition under the doctrine of procedural default." *Id.* at 1199. The court found that such a refusal did not constitute a failure to exhaust since a petitioner exhausts all of his remedies by taking advantage of "whatever appeals the state system affords as of right." *Id.* at 1200. Since the Illinois Supreme Court has discretion over the granting of petitions for leave to appeal thereto, the court stated that the filing of such a petition is not an appeal of right. *Id.* at 1200. Accordingly, the court found that by taking his appeal of right to the state appellate court, the petitioner had fairly presented his claims and there was no procedural default. *Id.* at 1201.

Against this backdrop, the Seventh Circuit's procedural default case law, as it pertains to post-conviction appeals, seems incongruent. In *Cawley,* the court was faced with the same situation we have here. Petitioner had been denied post-conviction relief by the trial court, took an appeal to the state appellate court, and then declined to file a petition for leave to appeal to the state supreme court. 71 F.3d at 693. The court found that "failure to appeal the dismissal of a post-conviction petition in Illinois state court will ordinarily be treated as an independent and adequate state ground (as if a state court had actually found the claims procedurally barred), preempting further habeas review in federal court." *Id.* at 694–95. The *Cawley* court based this statement on *People v. Core,* 48 Ill.2d 544, 272 N.E.2d 12, 13–14 (1971), an Illinois state case which it cited for the proposition that "a defendant's failure to appeal the dismissal of a post-conviction petition, coupled with the doctrines of res judicata and waiver, ordinarily bars further consideration of all claims which could have been raised." *Id.* The court went on to hold that petitioner had procedurally defaulted his claims since he voluntarily chose to invoke the post-conviction review process and then failed to appeal the denial of post-conviction relief to the highest state court. *Id.,* 71 F.3d at 695.

However, *Cawley* seems hard to square with *Hogan–Gomez–Boerckel,* for a few reasons. First, the *Cawley* court's use of *Core* to justify its decision seems misplaced. In *Core,* the state court dealt with a situation where a post-conviction petitioner failed to take his appeal of right to the state *appellate* court, not the supreme court. 272 N.E.2d at 14. In that context, the court held that generally a petitioner was barred from further post-conviction relief, although the court noted that the rule was not absolute and would not apply where a petitioner received clearly inadequate representation. *Id.* However, the *Cawley* court used *Core* to justify a different proposition: that a post-conviction petitioner's failure to take his discretionary appeal to the Illinois Supreme Court barred him from habeas review. Thus, *Cawley* seems to be based on dubious state law precedent. Further, when viewed in this light, *Cawley* appears hard to reconcile with the spirit, if not the actual holding, of *Boerckel,* which emphasized that a petitioner's failure to take his discretionary appeal to the state supreme court was not a procedural default.

No. 96–4068 at 16. Moreover, we find it hard to understand why a petitioner who fails to take a discretionary appeal to the Illinois Supreme Court on direct review—and thereby risks defaulted claims that could otherwise have been raised on post-conviction review—does not default his habeas claims, while a petitioner who fails to take a similar discretionary appeal on post-conviction review—where there is much less to lose and where the likelihood of the supreme court granting leave to appeal seems even more remote—is an absolute bar to habeas review. However, as it stands, *Cawley* is the law in this circuit and we must therefore find that Galvan's Claims I and II are procedurally defaulted.

 Thus, Galvan's procedural default would bar federal habeas review with respect to Claims I and II, unless Galvan can establish "cause and prejudice to excuse the default."[3] As stated above, a federal habeas petitioner may raise a federal claim which has been procedurally defaulted if he can demonstrate "cause" to excuse his failure to raise the claim in state court. *Farrell*, 939 F.2d at 411. The "cause" prong is satisfied when "some external objective factor, such as interference by officials or unavailability of the factual or legal basis of a claim" impedes petitioner's compliance with the state's procedural rule. *Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir.1992), *cert. denied*, 506 U.S. 890, 113 S.Ct. 257, 121 L.Ed.2d 189 (1992).

 Galvan has failed to demonstrate cause here. With respect to his failure to appeal his post-conviction petition, Galvan does not point to any external objective factor that would excuse procedural default. Generally, where a petitioner simply chooses to bypass an available state court procedure,

even where he believes the state court will be unsympathetic to his claim, the cause exception to the procedural default rule will not apply. *Rainone*, 1998 WL 25203 at *4. A petitioner cannot "simply opt out of the state review process because he is tired or frustrated by the results he is getting." *Cawley*, 71 F.3d at 695. Galvan does make one argument that could be construed as an attempt to demonstrate cause. Specifically, he states that he was not aware of Partida's willingness to testify until years after his trial. However, at best, this would merely show that Galvan was impeded in *timely filing* his post-conviction petition, not in *appealing* it to the highest state court, which is the issue here. Galvan also asserts that his counsel's ineffectiveness constitutes cause excusing his default. It is well established, however, that ineffective assistance of post-conviction counsel "is not itself a cognizable federal constitutional violation and may not [therefore] serve as cause for procedural default." *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir.1996). Thus, Galvan has not shown cause for his procedural default. Because he has not demonstrated cause, we need not determine whether he suffered any prejudice.

 With respect to Claims I and II, Galvan next argues that failure to excuse his procedural default would result in a fundamental miscarriage of justice. A fundamental miscarriage of justice is narrowly construed and is equivalent to actual, as opposed to legal, innocence. *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In order to demonstrate that a fundamental miscarriage of justice will result, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent."

---

3. We note that Galvan argues that Claims I and II have not been defaulted since a "petition for leave to appeal his post-conviction claims was not required for the defendant to have exhausted all state remedies in this instance ...." (Pet.Reply at 5–6). However, this argument confuses the distinct concepts of exhaustion and procedural default. A petitioner is required to exhaust all available state court remedies before his writ of habeas corpus will be reviewed. 28 U.S.C. § 2254(b)(1)(A). Exhaustion is deemed complete when state remedies are no longer available at the time the federal petition is filed. *Farrell v.* *Lane*, 939 F.2d 409, 410 (7th Cir.1991), *cert. denied, Farrell v. McGinnis*, 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991). There is no doubt that petitioner has fulfilled his exhaustion requirement. However, the argument the state makes is a different one based on procedural default. The fact that Galvan has exhausted his state court remedies, despite his failure to appeal his post-conviction petition to the state supreme court, does not mean that his procedural default is excused. We recognize that *Boerckel, supra,* to some extent undercuts the distinction between exhaustion and procedural default.

*Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To establish such a probability the petitioner must demonstrate that it is more likely than not that no reasonable trier of fact would have found him guilty beyond a reasonable doubt. *Id.*

Galvan claims that his trial counsel's ineffectiveness, as well as the state's alleged use of perjured testimony, are both "serious" constitutional violations that render the state court rulings contrary to clearly established federal law (Pet.Reply at 6). For this reason, Galvan asks this court to excuse his procedural defaults. This we cannot do on the basis of the arguments Galvan presents.

■ With respect to his claim of ineffective assistance of counsel, Galvan must show that it is more likely than not that no reasonable trier of fact would have found him guilty if they would have heard the testimony of Frank Partida. According to Galvan, Frank Partida would have testified that he was with Jose Ramirez moments before the fire started, when Ramirez claimed that he identified Galvan walking near the house that was set on fire. Partida would have stated that because of the distance to the individuals in the alley, and the poor lighting conditions, it would have been impossible for Ramirez to identify Galvan as he claims. However, even if we accept Partida's testimony, we cannot say that his failure to be called as a witness resulted in the conviction of someone who is actually innocent. At most, Partida's testimony would have cast doubt on the credibility of Ramirez, but it would not have directly contradicted Ramirez's statement. The jury would still have been free to believe Ramirez over Partida. Certainly we cannot say that no reasonable juror would have believed Ramirez after hearing the testimony of Partida. This is especially true since Ramirez's testimony was corroborated by other evidence at trial—most significantly, the detailed statement made by Galvan himself confessing to the crime. We cannot find a fundamental miscarriage of justice where Galvan's written confession weighed heavily against any contradictory evidence. Therefore, we find that Galvan has procedurally defaulted Claim I.

■ With respect to Galvan's claim that the state used perjured testimony, we simi-larly find that no fundamental miscarriage of justice would result from barring the claim on habeas review. Galvan argues that his due process rights were violated when the prosecution knowingly presented the false testimony of Jose Ramirez, who claimed he identified Galvan in the alley next to the house moments before the fire started. Galvan's only basis for characterizing Ramirez's testimony as false—and therefore "perjured"—is the fact that the prosecution knew that Frank Partida was with Ramirez before the fire started and that Partida stated to the police that it was impossible to identify anyone in the alley due to the distance and the darkness. The prosecution also knew that Ramirez was drinking and under the influence of alcohol when he allegedly saw Galvan in the alley. However, neither of these facts converts the prosecution's decision to have Ramirez testify into knowingly suborning perjury in violation of Galvan's constitutional rights. As stated above, Partida's statement does not contradict Ramirez's testimony; in fact, Partida corroborates Ramirez in many respects. For instance, both stated that they saw a group of people walking in an alley near the house that was set on fire moments before the fire started. The fact that Partida could not identify any of the people in the group does not render Ramirez's identification a lie—it simply shows a disagreement between witnesses. The prosecution was surely entitled to present the witness whose version of the events supported its position. Additionally, the fact that the prosecution knew Ramirez was intoxicated at the time is of no consequence since that fact was fully disclosed at trial and fully explored during the defense cross examination of Ramirez. Because we do not think that Galvan has demonstrated that Ramirez's testimony constituted perjury, we cannot find that any constitutional violation occurred that would have changed the result of Galvan's trial. Therefore, Galvan's procedural default of Claim II does not result in a fundamental miscarriage of justice. Accordingly, Claims I and II are barred from habeas review.

■ The state makes a similar procedural default argument with respect to Galvan's claim that his Fourth and Sixth Amendment

rights were violated when the trial court excluded evidence during a hearing on his motion to suppress that was relevant as to the existence of probable cause for his arrest (Claim V). The state argues that Galvan procedurally defaulted this issue by failing to present it to the Illinois Supreme Court. Galvan appealed this issue to the Illinois Appellate Court on direct review, *see Galvan,* 185 Ill.Dec. 257, 614 N.E.2d at 393, but, according to the state, failed to include this issue in his petition for leave to appeal to the Illinois Supreme Court. However, Galvan did include a lengthy discussion of the lack of probable cause for his arrest in his supreme court appeal (Resp.Ex.F at 14–21). While he may not have used the same phrasing to state his argument, we think a cursory glance at the substance of Galvan's supreme court argument shows that he raised the identical issue there as he does here, namely, whether the police reliance on Michael Almendarez's statement was sufficient to create probable cause to arrest Galvan. Moreover, it is settled that a petitioner's failure to take a discretionary appeal to the state supreme court on direct review does not bar his habeas claims. *Hogan,* 74 F.3d at 147. We therefore reject the state's procedural default argument and will consider the merits of Galvan's claim below.

With respect to Galvan's claim that he was denied his right of confrontation (Claim VI), the state argues that this issue (in part) is barred as a result of the state appellate court's refusal to consider the issue due to Galvan's failure to object to the allegedly improper testimony at trial and his failure to raise the issue in his post-trial motion. Galvan claims that the state presented two pieces of improper evidence that denied him his right of confrontation: (1) a police officer's testimony that he "intensified" his effort to find Galvan after he spoke to Michael Almendarez and that Galvan admitted guilt after the police told him what Almendarez had said about him; and (2) a police officer's testimony which implied that the co-defendant, Francisco Nanez, had made a confession which corroborated Galvan's confession.

■■■ The state argues that Galvan has waived his claim that the police officer's

statements regarding Michael Almendarez violated his constitutional right to confront witnesses against him. Specifically, the Illinois Appellate Court found that because Galvan did not object to the alleged improper testimony regarding Almendarez and did not raise the issue in his post-trial motion, Galvan had waived the issue for appeal. *Galvan,* 185 Ill.Dec. 257, 614 N.E.2d at 396. According to the state, this procedural default constitutes an independent and adequate state law ground that bars habeas review. We agree. It is well settled that a failure to object at trial or in a post-trial motion "constitutes an independent and adequate state ground and [federal courts] will not entertain that claim." *Aliwoli v. Gilmore,* 127 F.3d 632, 634 (7th Cir.1997). As Galvan has made no claim that there was cause and prejudice excusing this default, we will not consider Claim VI insofar as it relates to the alleged improper presentation of statements made by Michael Almendarez.

In conclusion, we find that Galvan has procedurally defaulted Claims I, II and that part of VI that relates to the Almendarez evidence.

## II. *Stone v. Powell*

In Claim III, Galvan argues that he was arrested without probable cause in violation of his Fourth Amendment rights. He contends that the trial court erroneously imposed upon him the burden of demonstrating the illegality of the arrest, and that the state courts erred in finding that the accusation of Michael Almendarez, which formed the basis for Galvan's arrest, was credible. The state argues that this claim is barred under the rule of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). We agree.

■■■ In *Stone,* the Supreme Court established a general rule that criminal defendants may not seek collateral review of Fourth Amendment exclusionary rule claims under § 2254 if they received "an opportunity for full and fair litigation of" their Fourth Amendment claims in state court. *Id.,* 428 U.S. at 494. *Stone* merely recognized "a very narrow exception to the general rule that a habeas petitioner may not bring Fourth Amendment claims." *Turentine v.*

*Miller,* 80 F.3d 222, 225 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 394, 136 L.Ed.2d 309 (1996). The general rule barring habeas review of Fourth Amendment claims exists "because even if there has been an illegal search or seizure, there is no constitutional right to be vindicated through the writ of habeas corpus—there is no individual right to have improperly gathered evidence excluded from a criminal trial." *Holman v. Page,* 95 F.3d 481, 489 (7th Cir.1996). Rather, the sole justification for the rule is to "secure obedience to the Fourth Amendment on the part of law-enforcing officers." *Stone,* 428 U.S. at 487 n. 24 (internal citations omitted). The Seventh Circuit has "consistently held that a claim is *Stone*-barred if petitioner simply argues that the state court made a mistake in applying Fourth Amendment law." *Turentine,* 80 F.3d at 225–26. Instead, "habeas review of Fourth Amendment claims is reserved for instances where the state made an egregious error (*e.g.,* failed to apply Supreme Court precedent directly on point after the argument was clearly presented), thus effectively depriving the petitioner of the ability to vindicate his federal rights in state court." *Id.* at 226.

▇▇ Here, there is no doubt that Galvan had a full and fair opportunity to litigate his Fourth Amendment claim and request suppression of allegedly unlawful evidence. The matter was fully litigated before the trial court during the motion to quash arrest and suppress evidence, and was raised on appeal and considered by the Illinois Appellate Court. There is no indication that the state court made the type of egregious error that would warrant habeas review on this issue. Therefore, this court rejects Galvan's Fourth Amendment claim for habeas relief.

### III. *Review of the Merits of Petitioner's Claims*

▇▇ Galvan's petition, which was filed on April 24, 1997, is governed by the recent amendments to 28 U.S.C. § 2254. Section § 2254(d) governs the consideration of any claim adjudicated by a state court on its merits. *Lindh,* 96 F.3d at 868–71. Under

the provision of § 2254(d)(1), habeas relief may be awarded only if the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," as determined by the United States Supreme Court. Under subsection (d)(2), habeas relief is only possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court. The "unreasonable application" exception of § 2254(d)(1) applies to mixed questions of law and fact, and thus where the state court offers "a responsible, thoughtful answer," after "a full opportunity to litigate" the question, a federal court on habeas review must accept that answer as "adequate to support the judgment." *Id.* at 871. We will thus consider each of Galvan's claims under these standards.

### 1. Trial Court's Exclusion of Evidence as to Third Party's Motives (Claim IV)

Galvan claims that his Fifth, Sixth and Fourteenth Amendment rights were violated when the trial court excluded on hearsay grounds evidence that Galvan contends would have shown that a young woman named Lisa Velez had expressed her intention to commit the crime for which he was convicted. Specifically, Galvan states that he made a partial offer of proof that revealed that the victim's sister, Blanca Martinez, would have testified that Lisa Velez had threatened to burn her house down a week prior to the actual fire. Martinez would have also testified that the reason Velez wanted to burn down the house was to kill one of the building residents, Jorge Martinez, because he was a Latin King gang member. Further, Galvan contends that the Chicago police reports contain evidence that Velez made threats to burn down the building and that at least two witnesses the police interviewed believed that Velez was responsible for the fire (Pet.Ex.A). According to Galvan, the trial court excluded the evidence of Velez's motive on hearsay grounds.[4] Galvan argues that it should have

---

4. The appellate court upheld the trial court's

ruling, but seemed to predicate its decision on

been admitted under the state-of-mind exception.

■ This issue thus presents the familiar conflict between the rights of criminal defendants under the Sixth and Fourteenth Amendments to present evidence in their own defense, and each state's "sovereign prerogative" to regulate the presentation of evidence in its courts. *Johnson v. Chrans*, 844 F.2d 482, 484 (7th Cir.1988), *cert. denied*, 488 U.S. 835, 109 S.Ct. 95, 102 L.Ed.2d 71 (1988). In accordance with the Supreme Court's analyses in *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), and *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), we employ a balancing approach to resolve this conflict. This court's task is "to evaluate the exculpatory significance of relevant and competent evidence and then balance it against the competing state interest in the procedural rule that prevented the defendant from presenting this evidence at trial." *Cunningham v. Peters*, 941 F.2d 535, 538 (7th Cir. 1991), *cert. denied*, 503 U.S. 940, 112 S.Ct. 1484, 117 L.Ed.2d 626 (1992).

■ "A colorable claim that the application of state evidentiary rules has interfered with a defendant's right to present a defense triggers an assessment whether these legitimate state interests ... are materially advanced by the exclusion of particular evidence." *Johnson*, 844 F.2d at 484. Thus, in *Chambers*, the Supreme Court held that a state's hearsay rule could not be used to exclude a confession that would have exonerated the defendant where it "bore persuasive assurances of trustworthiness." *Chambers*, 410 U.S. at 302. On the other side of the balance we must "examine carefully the significance of the contested evidence to the defendant's case." *Johnson*, 844 F.2d at 484. "The strength of a defendant's argument that state rules of evidence, rather than the defendant's right to present exculpatory evidence, should give ground depends largely on the importance of the evidence." *Id.* (citations omitted). We now apply this approach

in order to determine whether Galvan was deprived of his constitutional rights by the trial court's exclusion of the out-of-court statements by Lisa Velez.

■ First, we must evaluate whether legitimate state interests were advanced by the exclusion. Illinois courts have established the parameters of the state-of-mind exception to the hearsay rule that are well supported by concerns about reliability and jury confusion. *Johnson*, 844 at 485. Under Illinois law a hearsay statement may be admissible under the state-of-mind exception where the declarant is unavailable, and there is a reasonable probability that the proffered hearsay statements are true. *People v. Goodman*, 77 Ill.App.3d 569, 33 Ill.Dec. 49, 396 N.E.2d 274, 278 (4th Dist.1979). In a case such as this, where the declarant's later conduct is at issue, Illinois courts have found that statements which disclose the declarant's state of mind may be admissible despite their hearsay character, where they give reliable inferences about declarant's later conduct. *Johnson*, 844 F.2d at 485.

Although we do not find this issue to be an easy one, we conclude that the exclusion of Velez's statements was consistent with legitimate state interests in ensuring the reliability of admitted evidence. According to the police reports, Lisa Velez was friends with Jane Borys and Leticia Figueroa, both of whom lived in the apartment complex at 24th Place that was subsequently set on fire. Jane Borys lived with Jose Santo, and for a while the two rented a basement apartment at 24th Place from Blanca Martinez, the sister of one of the victims of the fire. Santo stated that he and Borys moved out of the apartment after an incident with Blanca Martinez, after which Santo knocked out a window in his apartment. It is reported that Lisa Velez was angry at Blanca Martinez for making Santo and Borys move and also because she suspected that Martinez had called the county and reported Figueroa as a child abuser. In the police report, Blanca Martinez stated that she heard Velez threaten to

relevance grounds, stating that Galvan had failed to establish a "close connection" between the other people alleged and the commission of the crime, as required under Illinois law. *Galvan*,

185 Ill.Dec. 257, 614 N.E.2d at 396–97. Because Galvan's argument is based on the trial court's hearsay rationale, we will address that issue and leave aside the relevancy question.

kill her and her brother, Jorge, and break the windows in her apartment. Martinez also was allegedly told by Jorge that Velez threatened to burn down the Martinez family home.

Galvan proposed to have Blanca Martinez testify as to Velez's out-of-court statements in order to suggest that Velez should have been considered an alternative suspect. However, the proposed use of the Velez hearsay evidence would have introduced significant sources of unreliability. With respect to the alleged statement that Velez was going to burn the house down, a double hearsay problem existed since Blanca was prepared to testify about information she learned from Jorge, which, in turn, he allegedly heard from Velez. In addition to the danger that Velez misrepresented her intentions to Jorge, there is also the possibility that Jorge misrepresented Velez's intentions or that Blanca Martinez misunderstood them. *Johnson,* 844 F.2d at 486. Moreover, the hearsay statements attributed to Velez bear none of the indicia of reliability found to be significant in *Chambers:* Velez's statements were not made to a close acquaintance shortly after the crime occurred, there was no other corroborating evidence linking Velez to the crime, and Velez's statements were not self-incriminating since she merely made threatening statements and at no time confessed to the crime. 410 U.S. at 300–01. We therefore find that the trial court served a legitimate state interest when it ruled to exclude Velez's hearsay testimony.

We next evaluate whether Galvan can show that the excluded evidence was critical to his defense. We think that he cannot. The testimony that Galvan sought to have admitted could, at most, have persuaded a jury that Velez had threatened to burn Blanca Martinez's house and that Martinez was alarmed by this threat. This, by itself, is not enough to show the critical nature of the testimony in light of the other compelling evidence that the state had marshaled against Galvan. *Johnson,* 844 F.2d at 487. The excluded testimony could not have significantly diminished the weight of Galvan's own confession and the eyewitness testimony of Jose Ramirez. Thus, even if we disre-

garded its unreliability, the excluded hearsay evidence was still insufficiently exculpatory for this court to mandate its admission. We thus conclude that the trial court committed no error of constitutional magnitude when it excluded the hearsay evidence. As a result, we find that habeas relief is not warranted on the basis of Claim IV.

### 2. Trial Court's Exclusion of Evidence Undermining Existence of Probable Cause (Claim V)

In Claim V, Galvan returns to the issue of the propriety of the trial court's determination that there was probable cause for his arrest, which he raised in Claim III. Specifically, he argues that the trial court erroneously excluded evidence that would have shown that Michael Almendarez's statements were not sufficiently trustworthy to form the basis for probable cause to arrest. He claims that the trial court's exclusion violated his Fourth and Sixth Amendment rights, and, in addition, denied him due process of law.

Galvan argues that where the police arrest a person based upon a statement of a suspect of a crime—in this case Michael Almendarez—and where the suspect does not incriminate himself, the circumstances surrounding the suspect's statement are highly relevant in determining probable cause. Here, Galvan contends that the trial court erred in excluding the following information relevant to probable cause: (1) whether Almendarez was forced to go to the station; (2) whether he was handcuffed; (3) whether the police told him he would be put behind bars; (4) how long he was in the station and how long he was questioned before accusing Galvan; (5) whether other witnesses to the offense, specifically Rene Rodriguez, failed to identify Galvan; (6) whether the facts relative to the fire were different than those related by Almendarez; and (7) whether others may have caused the fire.

Although Galvan frames his claim in terms of the Fourth and Sixth Amendments, we think that the substance of his arguments indicates that he is again making a due process argument that the trial court's rulings denied him his constitutional right to present

relevant evidence. *Carbajol v. Fairman,* 700 F.2d 397, 400–01 (7th Cir.1983). As we discussed above in Part III.1, our task in evaluating the constitutional import of a trial court's decision to exclude certain evidence is to weigh the exculpatory significance of the evidence against the competing state interest in the procedural rule that prevented the defendant from presenting this evidence at trial. *Cunningham,* 941 F.2d at 538. Here we find that the balance tips in favor of the propriety of the state court's rulings.

■ We first address the exclusion of issues (1)-(4). Essentially, Galvan is arguing that the trial court prevented him from presenting a defense during the motion to quash arrest and suppress evidence, by excluding evidence that would have cast doubt upon the reliability of Almendarez's statement. Specifically, he contends that the fact that Almendarez may have believed he was a suspect in the investigation undermined the reliability of his accusation against Galvan, and therefore the subsequent arrest was without probable cause.

During the motion to suppress, Officer James Hanrahan testified as to what happened during the questioning of Almendarez. He stated that when Almendarez was confronted, he was told that they were Chicago police officers and that he had to go with them to the police station. He testified that Almendarez was not handcuffed when he was placed in the interview room at the police station, and that he was advised of his constitutional rights before the interrogation began. He further stated that once the questioning began, Almendarez admitted, within three to five minutes, that Galvan and Nanez told him that they had set the fire.

Almendarez then testified at the hearing for the defense. He stated that he was detained by the police at approximately 9:30 a.m. on June 8, 1987. He testified that he was not read his constitutional rights, and that he was not handcuffed. He further testified that the police did not believe him when he denied any knowledge of the fire. Instead, they accused him of committing the crime and told him to make it easy on himself by signing a statement. After ten or twelve hours in the police station, Almenda-

rez told police that Galvan and Nanez admitted setting the fire. Almendarez then stated that he accused Galvan and Nanez only because it was what the police wanted to hear.

Officer Switski, a detective investigating the case, then testified in rebuttal. He stated that Almendarez gave the statement against Galvan and Nanez at approximately 11:00 a.m., and remained voluntarily at the station until 1:00 a.m. the following day, during which time he assisted the police with the investigation. Switski admitted that he never told Almendarez he was free to leave; that he never told him what to say, although he did inform him that he had witnesses who could place him at the scene.

The assistant state's attorney who interviewed Almendarez testified that he did not inform him of his constitutional rights. He also testified that he talked with Almendarez until about 8 p.m., during which time Almendarez made the statement against Galvan and Nanez. The state's attorney then stated that Almendarez's statement was reduced to writing around 12:30 a.m.

Thus, despite Galvan's assertions to the contrary, most of the information Galvan complains was excluded was in fact fully aired and considered by the trial court. Testimony regarding whether Almendarez was forced to go to the police station, how long he remained there, and whether he was handcuffed, was in fact heard and considered by the trial court. It is clear that the court evaluated the credibility of Almendarez's statement in light of the conflicting testimony regarding whether he was read his constitutional rights, whether he immediately made his accusation against Galvan, and whether he was detained against his will for several hours. To the extent that the court excluded specific pieces of evidence, we do not think that these were so critical to Galvan's defense to constitute a due process violation in light of the full consideration of the circumstances surrounding Almendarez's statement. Certainly, it was clear from the testimony of Almendarez that he claimed he was coerced into making a false statement by the police. We cannot find that the trial court's failure to admit, for example, Almendarez's specific assertion that the police were going to put

him "behind bars" was of such significance as to warrant habeas relief where Almendarez clearly conveyed to the trial court that he lied to the police because that is what they wanted to hear. In this context, we cannot say that the trial court made an error of constitutional significance when it made its specific evidentiary rulings.

■ Additionally, we find that the trial court did not err in excluding issues (5), (6) and (7). With respect to (5), Galvan seems to argue that the trial court's exclusion of Rene Rodriguez's assertion that he did not see anyone in the alley prior to the fire constituted an error of constitutional magnitude (Pet. at 28). However, the fact is that the substance of Rodriguez's statement was fully explored before the trial court during the testimony of Officer Hanrahan (Pet.Stmt.of Facts at 4–5). Hanrahan acknowledged that Rodriguez stated that he did not see anyone in the alley prior to the fire, although he did say that he saw Galvan watching the fire (Pet.Stmt.of Facts at 4). Given that this issue was fully considered by the court, we see no constitutional violation. Further, Galvan's amorphous claim that the trial court excluded "facts relative to the fire [that] were different than those related by the informant Almendarez" (Pet. at 28), is not fully explained in his brief and is otherwise unsupported by the record. Finally, with respect to Galvan's claim that the trial court wrongfully excluded evidence that other persons may have started the fire, we have already considered and rejected that argument. Accordingly, we deny habeas relief on the basis of Claim V.

### 3. Right to Confront Non–Testifying Co–Defendant (Claim VI)

Finally, Galvan argues that the prosecution presented evidence that the co-defendant, Francisco Nanez, had made a confession, and that this evidence violated his Sixth Amendment right to "be confronted with the witnesses against him." In particular, at trial the prosecutor elicited the following information from the assistant state's attorney who took the recorded statements of Galvan and Nanez:

Q: [A]t 11:05 p.m., on June 8, 1987, who did you take a court reported statement of, at that time?

A: Francisco Nanez.

Q: After finishing that court reported statement of Francisco Nanez, what did you do?

A: After we finished that statement, the court reporter proceeded to take the tapes that came out of her machine, and she typed the statements up for both, Nanez and Galvan.

Q: Did you then interview another witness by the name of Jose Ramirez?

A: Yes, I did.

Q: And did that interview take place at, approximately, 11:15 p.m. that night?

A: Yes.

\* \* \* \* \* \*

Q: After you finished speaking with Jose Ramirez, did you than receive some documents from the court reporter?

A: Yes, sir, I did.

Q: What were those documents?

A: Well, at that time, she was finished typing up the court reported statements that Mr. Galvan had given and also that Mr. Nanez had given.

(R. 519–20).

Galvan argues that the "obvious implication" of this testimony is that his confession was corroborated by a confession given by Nanez. Galvan contends that the state's introduction of this allegedly inculpatory extra-judicial statement made by a non-testifying co-defendant violates his Sixth Amendment right under *Bruton v. United States*, 391 U.S. 123, 127, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Galvan seems to conclude that the state court's ruling that the testimony was admissible was either contrary to or an unreasonable application of clearly established federal law. We disagree.

■ The Supreme Court in *Bruton* addressed a situation very different than the one we are confronted with here. In that case, the issue was whether the Bruton's Sixth Amendment right had been violated when, during a joint criminal trial, the investigator who had obtained a confession from a

co-defendant testified as to the substance of that confession, which implicated Bruton. The court held that due to the likelihood that the jury would believe the portions of the confession implicating Bruton, he was denied his constitutional right to confrontation by not being afforded an opportunity to cross examine the co-defendant. *Id.*, 391 U.S. at 126. Here, the substance of Nanez's court-reported statement was never disclosed during trial, and it was never revealed to be inculpatory. To the contrary, the assistant state's attorney's testimony merely recounted the steps he took during his investigation.

 Where a witness does not repeat an accusation of guilt or clearly implicate the defendant with his statements, but rather simply recites facts surrounding the police investigation, a *Bruton* violation will not be found. *See United States ex rel. Cole v. Lane,* 752 F.2d 1210, 1216–17 (7th Cir.1985); U.S. ex rel. *Blanch v. Fairman,* No. 87–C–5265, 1988 WL 33822, *1 (N.D.Ill. April 7, 1988). That is the case here, where the state's attorney's testimony made no mention whatsoever of the content of Nanez's statement. All that can reasonably be gleaned from the testimony is that the state's attorney interviewed both Galvan and Nanez and the court reporter recorded both of their statements. We disagree with Galvan's argument that the state's attorney's recital of the temporal progression of his investigation clearly conveyed the implication that Nanez made a statement that entirely corroborated the confession made by Galvan. The jury could just as easily have concluded that Nanez confessed that he alone committed the crime, that someone else (neither he nor Galvan) committed the crime, or that he did not know who committed the crime. Moreover, since the jury already knew that Galvan had confessed independently, any implication that the Nanez statement corroborated Galvan's was at best cumulative since it simply repeated the previous admission made by Galvan that he was guilty of the crime charged. *See United States ex rel. Cole,* 752 F.2d at 1216–17.

Thus, we conclude that since the state's attorneys' testimony did not disclose the content of Nanez's statement, and since the tes-timony did not convey that Nanez had implicated Galvan, no *Bruton* violation occurred. We therefore find that habeas relief is not warranted for Claim VI.

## CONCLUSION

For the foregoing reasons, the petition is denied.