COBB, Judge.
On September 11, 2001, Clinton J. Man-cuso was convicted of domestic violence in *1025 the third degree, a violation of § 13A-6-132, Ala.Code 1975. On October 25, 2001, the trial court sentenced him to serve 12 months in the Baldwin County jail and ordered him to pay a $250 fíne pursuant to the Alabama Crime Victims Assessment Act. This appeal followed.
We note that effective July 1, 2000, the crimes of domestic violence in the first, second, and third degrees were added to the Ala.Code 1975. See §§ 13A-6-130, -131, and -132, Ala.Code 1975. It appears from our research that the issues presented by Mancuso with regard to his third-degree domestic violence conviction have yet to be addressed by any Alabama cases. Additionally, our research has failed to uncover any cases involving the offense established by § 13A-6-132, AIa.Code 1975, in general.
On August 14, 2000, Mancuso and his wife Norshay, who was pregnant at the time, were arguing in the kitchen of their home. Mancuso told Norshay that he was leaving her and moving back to Texas. After a verbal exchange, Norshay took a shower and then went into the kitchen where Mancuso was using a large kitchen knife to cut onions. They began arguing again, and Mancuso cut Norshay on the hand with the knife. After he cut her, Mancuso offered to take Norshay to the hospital, but he left when she told him she was going to call the police. Norshay telephoned the police and was transported to the hospital; she received stitches to close the cut on her hand. She was kept in the hospital for observation because she was experiencing stomach pains. Mancuso was arrested later at his father’s house.
There is conflicting testimony as to how Norshay was cut with the knife. Norshay testified:
“[Mancuso] walks at me with the knife like this. And he says, ‘I’ll just kill you and the baby.’ That’s when he proceeded to go to my throat, twice.
“And when he went down toward my stomach, and I’m stepping back — the second time, he went toward my stomach with the knife, which was another slashing motion, I put my hand in front of my stomach to protect the baby. And when I did, the knife hit my hand instead of my stomach.”
(R. 46.) Mancuso acknowledged cutting Norshay, but testified that it was an accident. He testified that he tends to “talk with [his] hands.” (R. 121.) He further testified that he did not slash at her with the knife and he did not realize she had been cut until he saw her hand bleeding.
Mancuso asserts two issues on appeal, and we address each in turn.
I.
First, Mancuso argues that the trial court erroneously denied his request for a more specific verdict form. Specifically, Mancuso contends that the verdict form was inadequate because it contained only a place for a finding of guilty or not guilty, but did not require that the jury specify the factual manner in which they found the offense was committed. We disagree.
In his objection to the jury form, Man-cuso stated:
“[We do not have any objections to the jury] charge, Your Honor. But we object to the verdict form on the ground that it lumps the offenses which you consider lesser included offenses of assault third, menacing, and reckless endangerment into one count, so that if the jury were to return a verdict of guilty of the lesser included offense, which you characterized on the verdict form as domestic violence third, it would be impossible for anybody to know whether or not they had found Mr. Mancuso guilty of domestic violence third on the basis of *1026 an assault third, of either variety, with which you instructed them, that is, assault third, reckless or assault third, criminal negligence, or menacing, or reckless endangerment
(R. 147-48.) The trial judge overruled the objection.
Mancuso was convicted of third-degree domestic violence as a lesser-included offense of second-degree domestic violence, § 13A-6-131, Ala.Code 1975. Section 13A-6-132(a), Ala.Code 1975, provides in relevant part:
“A person commits domestic violence in the third degree if the person commits the crime of assault in the third degree pursuant to Section 13A-6-22; the crime of menacing pursuant to Section 13A-6-23; the crime of reckless endangerment pursuant to Section 13A-6-24; the crime of criminal coercion pursuant to Section 13A-6-25; or the crime of harassment pursuant to subsection (a) of Section 13A-11-8; and the victim is a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant.”
Section 15-17-3, Ala.Code 1975, provides:
“When the intent with which, the mode in or the means by which an act is done is essential to the commission of the offense and such offense may be committed with different intents, in different modes or by different means, if the jury is satisfied that the act was committed with one of the intents, in one of the modes or by either of the means charged, it is sufficient; and the jury must convict, although uncertain as to which of the intents charged existed, in which mode or by which of the means charged such act was committed.”
In Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), Justice Scalia, concurring in the judgment, addressed a similar issue; he stated: “As the plurality observes, it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.” Schad v. Arizona, 501 U.S. 624, 649, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (Scalia, J., concurring in part and concurring in the judgment).
In Perkins v. State, 808 So.2d 1041 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001), this Court stated:
“ ‘ “If a statute describes a single offense which may be committed in more than one factual manner, or by way of different acts, jury unanimity is not necessary as to the means by which it is committed, where the acts are conceptually similar or not repugnant to each other.”’ Knotts [v. State, 686 So.2d 431, 461 (Ala.Crim.App.1995) ], quoting 23A C.J.S. Criminal Law § 1398 (1989).”
808 So.2d at 1059. In Harris v. State, 632 So.2d 503 (Ala.Crim.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), this Court stated: “‘Our cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed.’ ” 632 So.2d at 514 (quoting Schad v. Arizona, 501 U.S. 624, 631, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)).
“The appellant argues that because the trial court charged the jurors that all 12 must agree as to one of three possible verdicts — guilty of the capital offense, guilty of lesser-included offense, or not guilty — the trial court’s instructions were improper. Specifically, the appellant argues that the instruction was error because it did not require the *1027 unanimity as to one of the alternative theories of the capital offense, i.e., murder for hire, murder pursuant to a contract, or murder for pecuniary gain. However, because we have previously concluded that the jury did not have to decide between this alternative language, the trial court committed no error in its instructions. See Schad v. Arizona, [501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ] (it was constitutionally permissible for the jurors to agree on a unanimous verdict based on any combination of the alternative means to a single offense. 501 U.S. at 624, 111 S.Ct. at 2493-506).”
Harris, 632 So.2d at 515.
The trial court properly charged the jury on unanimity. The jurors were not required to agree on the method by which Mancuso committed third-degree domestic violence. Therefore, the verdict form was not improper, and the trial court did not err when it denied Mancuso’s request for a more specific verdict form. Because his claim is without merit, Mancu-so is not entitled to any relief.
II.
Mancuso appears to argue that because the verdict form did not indicate under which underlying offense the jury convicted him, he cannot effectively argue that there was insufficient evidence to support his conviction. In his brief, Mancuso cited several cases attacking the sufficiency of the evidence, and then stated:
“We are not naive enough to believe that this Court will accept all of the arguments with respect to the lack of evidence to support any of the constituent offenses. The point is for the purpose of demonstrating to this Court that in order to determine whether there is or is not sufficient evidence it must be known what the trial jury decided. This Court should not substitute its own determination of fact for that of the jury, whatever it was.”
(Mancuso’s brief, p. 11.) As we addressed in Part I of this opinion, the jury was not required to unanimously agree by which method Mancuso committed third-degree domestic violence. Rather, to convict, the jury was required only to unanimously agree that Mancuso committed any of the included offenses and that the victim was within the statutory definition of included victims.
The Alabama Supreme Court addressed the appellate court’s role in reviewing the sufficiency of the evidence in criminal cases in Ex parte Woodall, 730 So.2d 652 (Ala.1998):
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985).’ Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d *1028 1040, 1042 (Ala.1978) (emphasis original).”
730 So.2d at 658.
Section 13A-6-22, Ala.Code 1975, provides that:
“(a) A person commits the crime of assault in the third degree if:
[[Image here]]
“(2) He recklessly causes physical injury to another person; or
“(3) With criminal negligence he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.”
Section 13A-6-23(a), Ala.Code 1975, provides that: “A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.” Section 13A-6-24(a), Ala.Code 1975, provides that: “A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.”
The evidence showed that Mancuso and Norshay were married and living together at the time of the incident. Norshay and Mancuso both testified that he was holding a large, fixed-blade kitchen knife at the time of the incident and that she was cut by the knife. Norshay testified that the cut hurt and that she felt pain. She was taken to the hospital, and the cut was closed with sutures. Norshay testified that Mancuso walked toward her and said “I’ll just kill you and the baby.” (R. 46.) Norshay testified that this statement frightened her. She also testified that Mancuso slashed at her throat twice and then at her stomach twice, the second time cutting her hand.
Mancuso testified that he and Norshay were within an arm’s length of each other and that he was waving the knife around. He did not stab or slash at her, but rather he “tend[ed] to talk with [his] hands.” (R. 121.)
The State presented sufficient evidence, if believed by the jury, from which the jury could convict Mancuso of domestic violence in the third degree based on reckless endangerment, menacing, or either theory of assault in the third degree.
Because his claim is without merit, Man-cuso is not entitled to any relief.
For the above-stated reasons, the judgment of the circuit court is due to be affirmed.
AFFIRMED.
McMILLAN, PA., and BASCHAB, SHAW, and WISE, JJ., concur.